[Cite as *State v. Kay*, 2015-Ohio-4403.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 26344 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 2012-CR-1589/1 |
| v. | : | |
| | : | (Criminal Appeal from |
| LINDA ROCIA KAY | : | Common Pleas Court) |
| | : | |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 23rd day of October, 2015.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by CARLEY J. INGRAM, Atty. Reg. No. 0020084, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45402
        Attorney for Plaintiff-Appellee

WILLIAM O. CASS, JR., Atty. Reg. No. 0034517, 135 West Dorothy Lane, Suite 209, Kettering, Ohio 45429
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

FAIN, J.

{¶ 1} Defendant-appellant Linda Kay appeals from her re-sentencing, upon

remand after we affirmed her conviction for Murder, Aggravated Robbery, Aggravated Burglary, and Tampering with Evidence, and remanded the cause solely for the trial court to determine whether her sentences should be imposed consecutively or concurrently. Kay contends that the trial court erred by imposing maximum, consecutive sentences, when her co-defendant was sentenced to significantly less years of imprisonment.

{¶ 2} The trial court did not err in imposing maximum sentences; revisiting the length of the sentences imposed for each offense was not within the scope of our remand. We conclude that Kay has established that the findings the trial court made for the imposition of consecutive sentences are clearly and convincingly unsupported by the record. Accordingly, the judgment of the trial court is Reversed and this cause is Remanded for modification of the termination entry as directed herein.

## I. The Offenses

{¶ 3} The facts were described in our opinion in Kay's first appeal, as follows:

This case involves the May 21, 2012 shooting and death of Robert Munday. At trial, the State presented the testimony of Gary Grier, who testified that he had known both Kay and Munday for years. He testified that the night of May 20, he was on Ron Lewis's front porch along with Lewis, Munday, and another friend named Jeffrey Brant. Grier testified that Lewis lived next door to Munday. Grier testified that around midnight, he saw Kay and an unknown male pull up in front of the homes. According to Grier, Munday left the porch, met Kay and the man with her, and the three proceeded to the back of Munday's home. Grier testified that he could hear

arguing in Munday's home, and could hear Munday yelling. He testified that he then heard a gunshot, followed by a second shot, following which everyone on the porch scattered. There were a total of three gunshots. Grier went between the two homes to the back of the houses, where he saw Kay exit from Munday's back door. Grier testified that she appeared to be waiting on someone. He testified that he then saw the unknown male come out of the home. The man had a gun in his hand. Kay and the man, who was limping due to a gunshot wound, hurried to Kay's car and drove off.

The State also presented the testimony of Lewis, who corroborated Grier's testimony. Lewis stated that he heard Munday yell, "what the f* * *," and then heard the gunfire. Lewis called the police.

The State next presented Tara Hughes, who testified that Munday was her boyfriend. She testified that Munday sold drugs from his kitchen and that, at the time of the shooting, he had $6,510 stored in a dresser in a bundle. She testified that Munday had loaned Kay $1,200 and a gun. After the shooting, the money was gone, but a few crumpled bills were laying around the dresser.

Jacob Mann, an Ohio State Trooper, testified that at 12:50 a.m. on May 21, he initiated a traffic stop of a vehicle traveling 75 miles per hour in a 55 mph zone on southbound Interstate 75 in the city of Moraine. Kay was alone in the vehicle. Mann noted that there were "crumpled bills" lying on the passenger floorboard and seat. Mann asked Kay where she obtained the money, to which she replied that she had won it at a "dice game." She

further informed Mann that she was traveling to "the boat," which he understood to be a casino. Mann testified that Kay was calm during the stop, and did not cause him any concern. He then issued a citation and ended the encounter.

Jason Young, an Indiana State Police Officer assigned to Hollywood Casino, testified that Kay was in the casino on May 21 at 3:28 a.m. He testified that Kay was noted for "suspicious activity," because she went to the "cage" and exchanged $1,300, in five and ten dollar bills, for larger bills. He further testified that Kay was observed entering the restroom wearing a long-sleeved dark shirt, and exiting the restroom wearing a white tank top.

Will Keltyk, a cage cashier at Hollywood Casino, testified that Kay came to his cage to exchange $1,300, in five and ten dollar bills, for larger bills. He testified that Kay's money was "crumpled up, a little, possibly torn." He further testified that he alerted his supervisor, because the transaction was suspicious and indicative of money laundering. He further testified that Kay was "fidgety and nervous," and did not want to provide her identification. He further testified that she attempted to "rush" him in the exchange.

The State presented Amy Ryan, who testified that she had been involved in a romantic relationship with Kay for approximately two years. Ryan testified that Kay and Munday were close friends, and that he had loaned Kay money. Ryan testified that Kay was not employed, and "a couple

weeks prior to [the shooting], we had went [sic] to the casino and [Kay] lost all of her money, all of it." On the date of the alleged offenses, Kay told Ryan that she was "going to go out and try to make some money." Ryan testified that she next heard from Kay again at about 1:30 a.m., when Kay telephoned her and told her to "take a deep breath in because they had bodied him." She further testified that Kay arranged for Ryan and Kay's mother to pack up a few items for Kay and to meet her at Hollywood Casino. Ryan testified that she and Kay's mother met Kay in the parking garage of the casino around 4:00 a.m., at which time Kay and her mother discussed disposing of Kay's vehicle. Kay then returned to her car and followed her mother out of the casino. They traveled past several houses until they reached a body of water. Kay had a black backpack with her when she exited the car. Kay put the car into neutral and rolled it into the water.

According to Ryan, Kay's mother then drove Kay and Ryan to a hotel in Ohio, where she left them. During the ride, Kay told Ryan that she had been involved in a robbery that "had gone bad," and someone had been shot. Ryan testified that Kay told her to register a room in Ryan's name. Kay gave Ryan cash to pay for the room. Once in the room Kay told Ryan that she "and some other people were going to rob somebody and that [Kay] had sent somebody in and he had a gun on him just for protection because [Munday] had guns in his house." Ryan testified that Kay told her she was merely the "getaway driver" and did not get out of the car.

Ryan testified that they went out to a carry-out gas station where

they purchased some snacks and scissors. Once back in the room, Kay proceeded to cut her "really long braids" off, put her hair in a bag, and throw the bag in the hotel dumpster. They then decided to go to a different hotel, so they called a cab. At the new hotel, Kay again gave Ryan cash and told her to register in Ryan's name. They then went to a nearby Walmart, where Kay spent $538 in cash to purchase a laptop computer, luggage, a cellular telephone and DVD's. Kay also purchased, with cash, a MoneyGram in the amount of $700. Ryan testified that the next day Kay bought her a car for $1,500 in cash "for what she'd put her through." Ryan testified that they then returned to their apartment. Kay went to the leasing office to attempt to pay rent in advance, so that Ryan would be able to stay there if Kay went to jail. Kay was arrested at the leasing office. Ryan testified that about one month later she found about $2,000 stuffed inside a plastic bottle of conditioner that was inside the luggage Kay had purchased. Ryan gave the police the bottle, the car, and about $460 in cash that Kay had given her.

*State v. Kay*, 2d Dist. Montgomery No. 25761, 2014-Ohio-2676, ¶ 3-11.

## II. The Course of Proceedings

{¶ 4} Following a jury trial, Kay was convicted of Murder, Aggravated Robbery, Aggravated Burglary, Felonious Assault, and Tampering with Evidence.

{¶ 5} At the initial sentencing, the trial court merged the three counts of Murder, and sentenced Kay to a prison term of fifteen years to life for that offense. The two counts of Aggravated Burglary were merged, and Kay was sentenced to a prison term of eleven

years for that offense. The two counts of Aggravated Robbery were also merged, and the trial court imposed a prison term of eleven years for that offense. The two counts of Felonious Assault were merged with one another, and with the Murder conviction. Kay was sentenced to a three-year prison term on the Tampering with Evidence charge. The trial court ordered the prison terms to be served consecutively, for a total sentence of 43 years to life, including a three-year sentence on merged firearm specifications. Kay appealed, and we affirmed her conviction but remanded the case to allow the court to address the factors necessary to determine whether the sentences should be imposed consecutively or concurrently.

{¶ 6} Upon remand, the trial court conducted another sentencing hearing, and again sentenced Kay to the same prison terms, ordering the sentences to be served consecutively for a total sentence of 43 years to life. At the second sentencing hearing, Kay's counsel raised three factors; that Kay was 24 years old, she had no prior criminal history of any kind, and that the co-defendant had only been sentenced to serve a total of 27 years.

{¶ 7} During the second sentencing hearing, the court addressed the decision to order consecutive sentences as follows:

> As to the consecutive sentences, the Court incorporates as i[f] repeated at this time the factual findings made at the time of the original sentencing.
>
> Additionally, the Court finds that a consecutive sentence is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness

of the offender's conduct and to the danger the offender poses to the public.

Additionally, the Court finds that at least two of the multiple offenses were committed as part of one or more courses of conduct and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the Defendant's conduct.

Resentencing Transcript pgs. 7-8.

**{¶ 8}** At the resentencing hearing, the court summarized the facts as follows:

As far as this case goes, this Defendant knew the victim, brought this other person who did not know the victim into his house. The victim was murdered. Money was stolen from the house. This Defendant then took that money and went to Indiana and spent a couple of hours after a, quote, friend who was killed in cold blood, went to Indiana and spent a couple of hours which we watched during trial kind of gambling the money away then took the car and drove it into a, or somehow the car was disposed of, into a lake so that any evidence was gone, so. I believe my original sentence was appropriate. I'm going to re-impose the same sentence.

*Id.* pgs. 4-5.

**{¶ 9}** At the first sentencing hearing, Kay made a statement expressing remorse by apologizing to the victim's family and friends, which the trial court did not find credible. The facts recited at the first sentencing hearing, which were incorporated[1] into the record

---

[1] The transcript of the original sentencing hearing does not identify any specific findings

at the second sentencing hearing are as follows:

At the trial that I presided over, there were people who knew you and Mr. Munday, who saw you bring a stranger to his house, and saw you go inside and heard shots and screaming. And saw you sort of jogging out, holding something under your jacket. And saw the stranger, that they didn't know - - you, they did - - come out to the car where you were waiting for him, bleeding. And in fact, his blood trailed out - - you were in the car waiting for him; drove off. Those were people who knew you. They identified you as being at the scene; as being inside when your dear friend, as you now characterize him, died.

Be it you, or the other participant because nobody else was in the room, but the three of you and only two came out, you actively either shot your dear friend, or participated in his murder. Lest you, again, listening to the trial, your friend, who appears to still care for you, testified that you characterized this as a robbery gone bad; putting yourself right in the middle of everything.

We also, which is unusual, had testimony of you after the event, going and gambling at the casinos as if you didn't have a care in the world. So as you stand here, I can only presume that what we're seeing are crocodile tears and that Mr. Munday was not your friend, or if he was your friend, at some point in time, you chose greed, getting money, getting back

of fact, and makes no reference to factors or factual findings relied upon to impose consecutive sentences. Therefore, all facts discussed by the trial court at the hearing are set forth herein.

at him, whatever, over that friendship.

Original Sentencing Transcript pgs. 793-794, Dkt. #7.

{¶ 10}  In the amended termination entry,[2] the trial court neither incorporates nor recites any factors or factual findings to support the imposition of consecutive sentences. The termination entry states that the trial court considered the defendant's criminal history, pre-sentence investigation, and facts and circumstances of the offense to determine that Kay was not eligible for a program of shock incarceration or intensive prison program. However, the pre-sentence investigation report, which includes the defendant's personal history, was not mentioned at either of the two sentencing hearings, was not marked as an exhibit at either hearing, and was not included in the termination entry as part of the facts considered for imposing consecutive sentences. The PSI also contains errors in a chart referring to sentencing factors, by referencing statutory section numbers that do not exist.[3] From the judgment of the trial court upon remand, Kay appeals.

### III. The Trial Court's Consecutive-Sentence Findings Are Clearly and Convincingly Unsupported by the Record

{¶ 11}  Kay's First Assignment of error states as follows:

---

[2] The record did not contain a copy of the amended termination entry because that entry was filed after the Notice of Appeal. However, when a premature appeal is filed after announcement of a sentence, but prior to the entry of judgment, App. R. 4(C) considers the appeal filed immediately after the date of the entry, which allows us to consider the termination entry.

[3] The PSI makes a finding that R.C. 2929.12(B)(10) and 2929.12(D)(6) apply to Kay's offense, but these two sections do not exist in the Ohio Revised Code.

THE TRIAL COURT AGAIN ERRED WHEN IT IMPOSED MAXIMUM, CONSECUTIVE SENTENCES ON THE APPELLANT.

{¶ 12} The purpose of the remand after the first appeal was limited to the trial court's reconsideration of whether to impose the sentences for the various offenses consecutively or concurrently; the scope of our remand did not include the issue of whether maximum sentences were appropriate for each offense. Whether a maximum sentence is excessive, inconsistent, or disproportionate to other felony sentences for similar offenses was not argued in the initial appeal. When we remand a cause for a specific purpose, the mandate is limited, and does not open up the hearing on remand for new issues not raised in the first appeal, or specifically included in the order of remand. "The doctrine of the law of the case 'is a rule of practice analogous to estoppel.' " *Allen v. Bennett*, 9th Dist. Summit No. 24124, 2008-Ohio-4554, ¶ 9, quoting *Hopkins v. Dyer*, 104 Ohio St.3d 461, 2004-Ohio-6769, 820 N.E.2d 329, at ¶ 22. "The doctrine also limits the actions that a trial court may take on remand to the scope of the reviewing court's mandate and places a corresponding limitation on the ability of an appellant to assert error in subsequent appeals." *Id.,* citing *Neiswinter v. Nationwide Mut. Fire Ins. Co.*, 9th Dist. Summit No. 23648, 2008-Ohio-37, ¶ 10. The issue of potentially excessive sentences not having been raised in the first appeal, that issue was not within the scope of our remand, and may not now be raised for the first time. Therefore, the issue is not properly before us and will not be addressed herein.

{¶ 13} Our review of Kay's First Assignment of Error is limited to whether the trial court erred in imposing consecutive sentences. At the second sentencing hearing, the

trial court made the statutorily required findings to explain why consecutive sentences were being imposed, without identifying any specific facts to support those findings. We recognize that the Supreme Court of Ohio has held that a trial court is not required to state reasons to support the statutory findings required to impose consecutive sentences. *State v. Bonnell,* 140 Ohio St. 3d 209*,* 2014-Ohio-3177, 16 N.E. 3d 659, ¶ 16. However, R.C. 2953.08(G)(2) requires an appellate court to review the entire record to determine if the sentence is contrary to law, and to evaluate whether the record clearly and convincingly does not support the statutory findings required to impose consecutive sentences. If the "reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." *Bonnell* at ¶ 29.

**{¶ 14}** R.C. 2929.14(C)(4) allows consecutive sentences when finding: first, that "the consecutive service is necessary to protect the public from future crime or to punish the offender"; second, that "consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public"; and third, that one of the findings described in R.C. 2929.14(C)(4)(a), (b) or (c) is present, including that "at least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct." In the case before us, the trial court made all three of these findings at the remand sentencing hearing.

**{¶ 15}** We have addressed our role in reviewing sentencing orders by recognizing

that we would no longer use an abuse-of-discretion standard in reviewing a felony sentence, but would apply "the standard of review set forth in R.C. 2953.08(G)(2)." *State v. Rodeffer*, 2013-Ohio-5759, 5 N.E.3d 1069, ¶ 29 (2d Dist.) "Under this statute, an appellate court may increase, reduce, or modify a sentence, or it may vacate the sentence and remand for resentencing, only if it 'clearly and convincingly' finds either (1) that the record does not support certain specified findings or (2) that the sentence imposed is contrary to law." *State v. Battle*, 2d Dist Clark No. 2014CA5, 2014-Ohio-4502, ¶ 7. We have acknowledged that this is an "extremely deferential standard of review." *Rodeffer* at ¶ 31. *See also State v. Hammad,* Montgomery No. 26110, 2015-Ohio-622, ¶ 29; *State v. McGlothan*, 2d Dist. Clark Nos. 2014-CA-120, 2014-CA-121, 2014-CA-122, 2015-Ohio-2713, ¶12. We also note that because R.C. 2929.41(A) creates a presumption in favor of concurrent sentences for most felony sentences, our review of the record must determine whether the presumption was overcome by the trial court's findings set forth in R.C. 2929.14(C)(4). *State v. Hatfield,* 5th Dist. Muskingum No. CT2014-CA-00052, 2015-Ohio-2846, ¶ 9.

{¶ 16} With respect to the first finding required by R.C. 2929.14(C)(4), the record is not clear what facts were considered by the trial court to reach the conclusion that consecutive sentences are necessary to protect the public from future crime or to punish the offender. If there exists a substantial likelihood that the defendant will commit future crimes, it can be concluded that a lengthier sentence would be needed to protect the public and punish the offender. Therefore, guidance is provided by R.C. 2929.12 (D), which lists factors to consider to evaluate whether a defendant is likely to commit future crimes. In the case before us, none of the recidivism factors are supported in the record.

Kay had no prior criminal record of any kind, so she was never adjudicated a delinquent child, she was never confined or unfavorably terminated from post-release control, and there was no record of serious drug abuse requiring drug treatment. Since the trial court found that Kay's expression of remorse lacked credibility, it appears that this factor is the only one that could lead the court to conclude that Kay was likely to be a recidivist. Balancing the one factor that weighs in favor of recidivism against the numerous factors that weigh against recidivism, particularly her lack of any criminal record, we conclude that the record fails to support this necessary finding for the imposition of consecutive sentences.

{¶ 17} With respect to the second finding required by R.C. 2929.14(C)(4), the record is not clear what facts were considered by the trial court to reach the conclusion that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public. For this factor, guidance is provided in R.C. 2929.12(B), which lists relevant facts to determine whether the offender's conduct is more serious than conduct normally constituting the offense. In the case before us, the record fails to support any special factor — the offense was not part of organized crime, and the victim was not targeted because of his race, age, physical condition, gender, sexual orientation or religion. The only factor identified by the trial court was the fact that Kay claimed to be a "dear friend" of the victim. This single fact, alone, is insufficient to conclude that the seriousness of the Kay's conduct demanded consecutive sentences. Furthermore, the record does not indicate any consideration by the trial court of the facts contained in the PSI report regarding Kay's mental disabilities, verified by her qualification for social security disability payments, which "causes her to be easily misled."

PSI at pg. 7. A mental health deficiency is a factor which should have been considered to mitigate against the seriousness of the offense.

{¶ 18} With respect to the third finding required by R.C. 2929.14(C)(4), the record is not clear what facts were considered by the trial court to reach the conclusion that the harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of Kay's conduct. The focus of this factor is the "so great or unusual" finding required to distinguish this offense from other identical offenses, and how this offense was part of a "course of conduct," which elevates the seriousness of the crime and the need for greater punishment. Even when one of the offenses is a conviction for murder, this factor still requires a finding that the course of conduct surrounding all the multiple offenses resulted in harm more egregious or unusual than the harm resulting from other similar multiple offenses.

{¶ 19} The record does not support a conclusion that Kay had engaged in a course of conduct that made the harm resulting from her offenses more egregious or unusual. Although "course of conduct" is not defined in R.C. 2929.14, for sentencing reviews we have looked at the definition provided by the Supreme Court of Ohio for purposes of reviewing the factual support needed to impose the death penalty. *See State v. Summers*, 2d Dist. Darke No. 2013 CA 16, 2014-Ohio-2441, ¶ 14. The Court held that course of conduct may be established by factual links including time, location, weapon, cause of death or similar motivation. *State v. Short*, 129 Ohio St. 360, 2011-Ohio-3641, 952 N.E. 2d 1121, ¶ 144. In the case before us, Kay's convictions were based on a single event, and she had no other criminal convictions or charges from which to infer that she

was engaged in any course of conduct involving a spree of felony offenses. The trial court's only comment about the unusual nature of the harm resulting from Kay's conduct was referring to her callousness in losing all the proceeds from the robbery at a gambling casino on the same night the offenses were committed. We are not persuaded that an offender's conduct in quickly losing the ill-gotten gains makes her offenses "so great or unusual" that consecutive sentences are mandated. Again, we conclude that the record fails to support a conclusion that the harm caused by the offenses committed by Kay was so great or unusual that consecutive sentences were required.

{¶ 20} In recent cases, we have reversed sentences imposed by trial courts when the record fails to support conclusions required to impose consecutive sentences. In *State v. Overholser*, 2d Dist. Clark No. 2014-CA-42, 2015-Ohio-1980, we reversed a judgment imposing consecutive sentences for five counts of gross sexual imposition because the record did not support the statutory factors required for imposing consecutive sentences, when the defendant was remorseful, his risk of recidivism was low, he had no criminal history, and the offenses were not more egregious than similar offenses. *Id.* at ¶ 29-32. We noted that the excessive sentence "may in fact demean the seriousness of other more violent crimes and harm to other victims" and that the record "did not demonstrate that consecutive service is the minimum sanction to accomplish the purposes and principles of sentencing without imposing an unnecessary burden on the State." *Id.* at ¶ 32-33. Similarly, in *State v. Adams,* 2d Dist. Clark No. 2014-CA-13, 2015-Ohio-1160, we reversed a judgment imposing consecutive sentences for three counts of burglary and one count of heroin possession, because the record did not support the statutory factors required for imposing consecutive sentences, when the defendant was remorseful, he

was seeking drug treatment, he had no criminal convictions as an adult, none of the offenses involved violence, the harm to the victims was minimal, and the offenses were not more egregious than similar offenses. *Id.* at ¶ 20-29.

{¶ 21} Based on our review of the record, we conclude that the record clearly and convincingly fails to support the findings necessary for imposing consecutive sentences. Therefore, Kay's First Assignment of Error is sustained. Although the sentencing entry must be corrected in accordance with this decision, we recognize that in this case, R.C. 2929.14(C)(1)(a) requires that the mandatory sentence for the gun specification is required to be served consecutively to the sentences for murder, aggravated burglary, aggravated robbery and tampering with evidence. Therefore, the total sentence shall be reduced to a prison term of 18 years to life.

## IV. The Sentencing Entry Must Contain Factual Findings
## Explaining Basis of Consecutive Sentences

{¶ 22} Kay's Second Assignment of Error states as follows:

THE TRIAL COURT FAILED TO PUT THE REQUIRED STATUTORY FINDINGS IN THE SENTENCING ENTRY

{¶ 23} We agree that the trial court was obligated to include its consecutive-sentencing findings in the sentencing order. *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 23. As we recently held in *State v. Hammad, supra, State v. Leet,* 2d Dist. Montgomery No. 25966, 2015-Ohio-1668, and *State v. Mayberry*, 2d Dist. Montgomery No. 26025, 2014-Ohio-4706, ¶ 34, it is necessary for the trial court to correct its sentencing entry to include the required statutory findings in the entry. However,

based on our conclusion that the termination entry must be modified to impose concurrent sentences, the correction of the entry to incorporate the statutory findings for consecutive sentences is no longer necessary. Therefore, Kay's Second Assignment of Error is overruled as moot.

## V. Conclusion

{¶ 24}   Kay's First Assignment of error having been sustained, and the Second Assignment of Error having been overruled as moot, Kay's sentence is Reversed, and this cause is Remanded with direction to the trial court to enter an amended termination entry, modifying Kay's sentences for murder, aggravated burglary, aggravated robbery and tampering with evidence to run concurrently with each other, but consecutively to the sentence for the firearm specification, as required by R.C. 2929.14(C)(1)(a).

. . . . . . . . . . . . .

DONOVAN, J., concurs.

HALL, J., dissenting:

{¶ 25} I disagree. The only question in this appeal is the trial court's consecutive-sentence determination.   That squarely brings into play R.C. 2953.08(G)(2)(a) and the "extremely deferential" standard of review recognized by *State v. Venes,* 2013–Ohio–1891, 992 N.E.2d 453 (8th Dist.). There that appellate court indicated:

It is important to understand that the "clear and convincing" standard applied

in R.C. 2953.08(G)(2) is not discretionary. In fact, R.C. 2953.08(G)(2)

makes it clear that "(t)he appellate court's standard for review is not whether

the sentencing court abused its discretion." As a practical consideration, *this means that appellate courts are prohibited from substituting their judgment for that of the trial judge.*

It is also important to understand that the clear and convincing standard used by R.C. 2953.08(G)(2) is written in the negative. *It does not say that the trial judge must have clear and convincing evidence to support its findings.* Instead, it is the court of appeals that must clearly and convincingly find that the record does not support the court's findings. In other words, *the restriction is on the appellate court, not the trial judge. This is an extremely deferential standard of review.*

*Id.* at ¶ 20–21 (emphasis added).

**{¶ 26}** Our court (*State v. Rodeffer,* 2013–Ohio–5759, 5 N.E.3d 1069, ¶ 31 (2d Dist.)), the Twelfth District (*State v. Lee,* 12th Dist. Butler No. 2012–09–182, 2013–Ohio–3404, ¶ 9), the Fifth District (*State v. Gooding,* 5th Dist. Holmes No. 13CA006, 2013–Ohio–5148, ¶ 7), the Eleventh District (*State v. Lane,* 11th Dist. Geauga No. 2013–G–3144, 2014–Ohio–2010, ¶ 123), and the Fourth District (*State v. Losey,* 4th Dist. Washington No. 14CA11, 2015–Ohio–285, ¶ 6-7) have cited and quoted *Venes* for the proposition that the review standard is "extremely deferential." Most of these cases also quoted the language from *Venes* recognizing that a trial court does not need clear and convincing evidence to support its findings. Given that our review is in the negative, as long as a trial court makes the appropriate statutory findings, the consecutive nature of its sentencing should stand unless the record overwhelmingly supports a contrary result.

**{¶ 27}** In my view, even a record that is largely silent is not clearly and convincingly

contrary to a trial court's consecutive-sentencing determination unless there is substantial affirmative factual information in support of the defendant to conclude that the trial court is clearly wrong. Here the trial court concluded that after the murder of her friend, the offender's gambling and spending spree, with money obtained from the robbery and murder of the victim, demonstrated such a callous disregard for human life that consecutive sentences were appropriate. Furthermore, disposing of her car into a lake "so that any evidence was gone" not only constituted a separate and distinct offense but added to the brazen nature of the offenses. I believe the trial court's sentencing conclusions were reasonable, and, more importantly, I simply am unable to conclude that the record is clearly and convincingly contrary to the imposition of consecutive sentences. Under such circumstances, we should not substitute our conclusions for those of the trial court.

{¶ 28} I also reject the idea that when analyzing consecutive-sentencing determinations under R.C. 2929.14(C)(4) either the trial court or this court is limited to the specific factors listed in R.C. 2929.12. A trial court is not required to give any statutory reasons or make any findings under R.C. 2929.12 to justify a sentence. *State v. Coots*, 2d Dist. Miami No. 2014CA1, 2015–Ohio–126. Likewise a trial court is not required to state the underlying reasons for its statutory conclusions for imposing a consecutive sentence. *State v. Bonnell*, 140 Ohio St.3d 209, 2014–Ohio–3177, 16 N.E.3d 659. Searching the record for R.C. 2929.12 factors is, in my view, beyond the review we are afforded by R.C. 2953.08. Finally, although we have limited authority to modify or vacate a sentence, we are not a sentencing court and cautiously should avoid becoming one.

. . . . . . . . . . . . .

Copies mailed to:

Mathias H. Heck
Carley J. Ingram
William O. Cass, Jr.
Hon. Barbara P. Gorman