[Cite as *State v. Cochran*, 2017-Ohio-983.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CHAMPAIGN COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | C.A. CASE NO.   2016-CA-11 |
| | : | |
| v. | : | T.C. NO. 12CR89 |
| | : | |
| KERMETH M. COCHRAN, III | : | (Criminal Appeal from |
| | : |  Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . .

**O P I N I O N**

Rendered on the _____17th_____ day of _____March_____, 2017.

. . . . . . . . . .

JANE A. NAPIER, Atty. Reg. No. 0061426, 200 North Main Street, Urbana, Ohio 43078
        Attorney for Plaintiff-Appellee

DANIEL F. GETTY, Atty. Reg. No. 0074341, 46 E. Franklin Street, Centerville, Ohio 45459
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

DONOVAN, J.

**{¶ 1}**   This matter is before the Court on the May 20, 2016 pro se Notice of Appeal of Kermeth M. Cochran, III.   Cochran appeals from his September 22, 2015[1] Judgment

---

[1] We note that Cochran also filed a pro se "Motion for Leave to File Delayed Appeal" on May 20, 2016.   The State opposed the motion, and this Court granted Cochran leave to file on July 30, 2016.

Entry of Conviction on one count of gross sexual imposition, in violation of R.C. 2907.05(A)(4)(C)(2)(b), following a plea of guilty. Cochran received a sentence of 60 months, which he challenges herein. We hereby affirm the judgment of the trial court.

{¶ 2} Cochran was indicted on April 5, 2012 on three counts of gross sexual imposition, all felonies of the third degree, and one count of public indecency, in violation of R.C. 2907.09(A)(1)(C)(2), a misdemeanor of the fourth degree. The victim is S.F. The record reflects multiple attempts of service of summons upon indictment. On June 26, 2015, a "Journal Entry of Initial Arraignment" was filed, which indicates that Cochran represented that he had not been served with a copy of the indictment, and that he was indigent. A subsequent arraignment hearing was scheduled for June 24, 2015. On that date, Cochran pled not guilty.

{¶ 3} On August 25, 2015, Cochran withdrew his plea of not guilty and entered a plea of guilty to Count III in the indictment. Pursuant to a plea agreement, the remaining charges were dismissed, along with Champaign County Common Pleas Court Case No. 2012 CR 329.

{¶ 4} The State recited the facts herein at the plea hearing and further asserted that Cochran was previously convicted of gross sexual imposition in Champaign County Common Pleas Court Case No. 2001 CR 207. Cochran acknowledged his understanding that the maximum penalty for his offense is five years, that imprisonment is mandatory, and that he would be classified as a Tier Two sex offender.

{¶ 5} The following exchange occurred at disposition:

THE COURT: * * * Counsel, do you have anything you would like to offer on behalf of your client?

MR. SHERTZINGER: As far as mitigation? Is this the time you want to hear that?

THE COURT: Yes.

MR. SHERTZINGER: Your Honor, I have reviewed the sentencing memorandum and the PSI report. Have not had the opportunity to discuss the contents of that with my client. But the contents of what was essentially provided to us in the discovery packet, really, there was no new information. There is really nothing there that we're going to dispute at this time in either the sentencing memorandum or PSI report.

* * * I suppose the one thing I do want to point out, as far as mitigating factors, as far as my client as to why he should be given some leniency, is his mental health condition. And that he has struggled with mental health issues for quite some time now. He was diagnosed with bipolar, amongst a variety of mental health issues. To the point that he received 100 percent Social Security disability.

* * *

The other thing in the PSI report that I would like to point out is that while there is still a bit of dispute as far as the actual incidents, he does appear to be extremely remorseful. And I believe that that was put into the - - I believe the PSI writer made note of that. And then just in all my dealings with him I can see that, you know, he recognizes that he does have a lifelong struggle. And he's dealing with it. Not always in the best ways in which he will acknowledge. But he is remorseful. And he realizes he

has a problem, and he should not be putting himself in situations where this problem could get him into trouble. Which it appears that is exactly what happened on the date of the incident.

THE COURT: All right. State have anything they would like to offer?

MS. WHETHERHOLT: Thank you, Your Honor. Your Honor, for the following reasons the State of Ohio would recommend the maximum sentence of 60 months for this Defendant. State would also note it filed the sentencing memorandum concerning this Defendant. And would like to incorporate this sentencing memorandum into our comments today.

\* \* \*

MS. WHETHERHOLT: \* \* \* And after reviewing the Defendant's PSI, the State would note a lack of remorse and responsibility taken by the Defendant for his actions. The Defendant, in his PSI, admitted to having contact with the victim in the instant case. He states that she must have been so scared and afraid of what might be next. In the next paragraph the Defendant states that he never inappropriately touched the victim.

The Defendant also has a previous felony GSI with another separate young female. The statements and actions by the Defendant indicate to the State that he has not taken responsibility and shows no remorse for his actions and he is a threat to do these again. State also notes a lack of cooperation on the Defendant's part in the PSI. The PSI writer, \* \* \* , visited the Defendant on August 29 of this year. The Defendant refused to

cooperate and be interviewed by her.   The Defendant also did not have his paperwork completed at that time.   And the State would like to note that the Defendant has a very lengthy criminal history that was presented in his PSI.   And for those reasons, and those mentioned in the sentencing memorandum, the State would recommend the maximum sentence of 60 months for this Defendant.

Furthermore, the Defendant was recently hospitalized for illegal drug use at the Tri-County Regional Jail.   The Prosecutor's office is currently investigating that matter. There is potential for charges to be pressed in the future against the Defendant.   Thank you, Your Honor.

THE COURT:   Mr. Cochran, you have an opportunity to address the Court.   Anything you would like to tell us?

MR. SCHERZINGER:   Your Honor, may I address?

THE COURT:   Yes.   You want to respond to what she said?

MR. SCHERTZINGER:   Yes, Your Honor. I think the characterization of my client as unremorseful is inaccurate.   I think the Court has read the PSI report.   Again, like I said, as far as the specific incidents that led to the basis of the guilty plea in this charge, those are still somewhat hazy.   As far as him making reference to her being scared, that is an acknowledgement that seems to show empathy.   I believe that - - and, again, he has expressed remorse.

As far as the incident, the State had said about an illegal drug use. I have not seen a report in reference to that.   * * * It's my understanding

that he had overdosed on Tylenol.

THE WITNESS: Extra [S]trength Tylenol.

MR. SCHERZINGER: So I don't know if it's necessarily illegal. I'm sure it would be an infraction of the jail rules. More than the allotted amount of Tylenol. But I don't believe that is an illegal - - or I don't believe it was an illegal substance. But, again, there is more information that could be forthcoming on that. My client would like to make a statement now.

THE COURT: Very good.

THE WITNESS: I would like to tell you I was as honest as I could possibly. [Sic]

THE COURT: Speak up.

THE WITNESS: I was as honest as I possibly could be in my PSI. And I wanted you to know the truth before sentencing.

THE COURT: All right.

MR. SCHERZINGER: Your Honor, that does refresh my memory as far as addressing one of the issues the State raised. The apparent lack of cooperation. I've said it several times as far as his mental health issues. There has been numerous times where I had gone to meet with my client where he was in the medical holding unit. His mental health issues have crossed over into the physical to where there are sometimes where he is just debilitated. And the day that the PSI writer first went to visit with him he felt that he was not physically able to meet with her at that time. I don't believe it was expressly a lack of cooperation on his point. Just that he

was ill. Thank you, Your Honor.

THE COURT: All right. My understanding from reading the PSI was that his reason for not seeing the PSI operator at the time was that he wanted to talk to his Counsel first. Which to me, was a more legitimate reason than what you are indicating right now. That he would want to talk to his Counsel before he filled out any forms - -

MR. SCHERZINGER: Okay.

THE COURT: - - that might subject him to some type of incriminating statement. All right.

Mr. Cochran, anything else you may have, sir?

THE WITNESS: It was that I wanted to speak with my attorney before I filled it out. But I didn't get the opportunity. So I proceeded because I knew she was coming back.

THE COURT: Anything else?

THE WITNESS: No, sir.

THE COURT: All right. Mr. Cochran, I do have to say this in going through the PSI, I made a concerted effort to try to find things that were favorable to you in there. There isn't much in there that is very favorable. Your record is terrible. You know, if you don't understand that at your age, you know, you are to the point where there isn't much that anyone can do. You may have some mental health issues. And maybe the best place to deal with those is in the institution. But you are going to have to deal with whatever the issues are because when somebody who doesn't know you

reads a report like I read, and I keep looking for something, what can I find that is favorable, and I get finished and I can't find anything. Other than the fact that I will say you did express some remorse, at least, to the PSI writer.

Nevertheless, the Court has considered the record and has considered the report of the Adult Court Services Department and considered the purposes and principles of sentencing under Revised Code Section 2929.11. And has balanced the seriousness and recidivism factors set forth in Section 2929.12. Has considered the victim impact statement. As well as considered the statements of Counsel and the statement of the Defendant.

Pursuant to Section 2929.13 the Court finds that there was physical harm to a person, that this is a sex offense, that there was a previous prison term served, and that the offender was already under a community control or non-prison sanction. Court further finds that this was the worst form of the offense. That the offender poses the greater likelihood of committing future crimes. As a result, the Court further finds that the Defendant should be sentenced to the Ohio Department of Rehabilitation and Corrections Correctional Reception Center accordingly for a definite period of 60 months for a violation of Revised Code Section 2907.05(A)(4)(C)(2)(b) of the Revised Code, gross sexual imposition, of which 60 months is a mandatory term.

{¶ 6} In its judgment entry of conviction, the court noted as follows regarding

Cochran's pre-sentence conduct:

• The Defendant at the time of the offense was serving, or the Defendant previously had served, a prison term. *R.C. 2929.13(B)(1)(b)(x).*

• to wit: Defendant served a prison term in Champaign County Case No. 1995 CR 056 for Felonious Assault

• to wit: Defendant served a prison term in Clark County Case No. 1997 CR 556 for Possession of Crack Cocaine

• to wit: Defendant served a prison term in Champaign County Case No. 2001 CR 207 for Gross Sexual Imposition

• to wit: Defendant served a prison term in Champaign County Case No. 2008 CR 340 for Arson

• **ORAS Score**: 20 – Moderate

{¶ 7} The court stated that in imposing sentence it considered the factors set forth in R.C. 2929.11, R.C. 2929.12, and R.C. 2929.13. The Judgment Entry of Conviction provides:

Upon consideration of all sentencing factors in Chapter 2929 of the Ohio Revised Code and all other matters in the case pertinent to sentencing, the Court sentences the Defendant as follows:

The Court finds that a term of imprisonment is mandated pursuant to R.C. 2907.05(A)(4)(C)(2)(b)

Count Three - Imprisonment of sixty (60) months to the Ohio

Department of Rehabilitation and Correction

The Court imposes the maximum sentence on Count Three, noting that the

offense was the worst form of the offense and that the Defendant poses the greatest likelihood of committing future crimes. *R.C. 2929.14(C)*

**{¶ 8}** Cochran asserts one assignment of error herein as follows:

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY SENTENCING APPELLANT TO THE MAXIMUM MANDATORY SENTENCE IN VIOLATION OF APPELLANT'S CONSITUTIONAL AND STATUTORY RIGHTS TO BE FREE FROM CRUEL AND UNUSUAL PUNISHMENT.

**{¶ 9}** Cochran asserts that "[d]*uring* sentencing the Court was informed of Mr. Cochran's untreated mental health issues. * * * However, the Court's main focus seemed to be on the PSI report regarding Mr. Cochran's [misdemeanor] background, and not on the mental health conditions, which obviously resulted in the crime at issue."

**{¶ 10}** Cochran asserts as follows:

Obvious from the record is that the Court in the present case failed to comply with the actual purposes of felony sentencing and thereby abused its discretion. It seems clear the court did not actually consider the purposes and principles of sentencing as it mentioned, but failed [to actually] consider Mr. Cochran's underlying mental health condition, which resulted in this crime. Instead, the Court simply sentenced Mr. Cochran to the maximum mandatory sentence of 60 months, offering no resolution or hope for rehabilitation as it failed to address Mr. Cochran's mental health conditions. Other minimum means were and remain available, such as confinement to an appropriate mental health facility or a reduced mandatory

sentence so that mental health could be implemented as a component of sentencing through judicial release. Here, the court simply made the "boiler plate" findings before sentencing Mr. Cochran to a * * * mandatory 60 months, despite Mr. Cochran's ongoing and untreated mental health conditions. By such, the Court abused its discretion in sentencing Mr. Cochran and, therefore, the sentence should be vacated and the case remanded for further proceedings.

{¶ 11} The State responds that Cochran "has failed to show that the trial court's imposition of a maximum sentence is clearly and convincingly contrary to law." The State asserts as follows:

> The trial court acknowledged the possibility that Appellant may have mental health issues and may have expressed remorse to the PSI writer, but the trial court also correctly noted that the PSI report had very little that was favorable to Appellant. * * * Further, Cochran now alleges that his mental health issues resulted in the crime at issue but did not present any testimony other than statements from Appellant's trial counsel that his mental health should be a mitigating factor in sentencing. * * * Although the trial court considered his possible mental health, the circumstances of the subject offense and Appellant's significant criminal history, as enumerated in the stated sentencing factors, certainly outweigh any such mitigating factor in imposing a maximum sentence here.

{¶ 12} The State concludes that "Appellant has failed to show by clear and convincing evidence that the sentence was contrary to law and has failed to show that

the record does not support the trial court's findings."

{¶ 13} As this Court has previously noted:

"The trial court has full discretion to impose any sentence within the authorized statutory range, and the court is not required to make any findings or give its reasons for imposing maximum or more than minimum sentences." *State v. King*, 2013–Ohio–2021, 992 N.E.2d 491, ¶ 45 (2d Dist.). However, in exercising its discretion, a trial court must consider the statutory policies that apply to every felony offense, including those set out in R.C. 2929.11 and R.C. 2929.12. *State v. Leopard*, 194 Ohio App.3d 500, 2011–Ohio–3864, 957 N.E.2d 55, ¶ 11 (2d Dist.), citing *State v. Mathis*, 109 Ohio St.3d 54, 2006–Ohio–855, 846 N.E.2d 1, ¶ 38.

*State v. Armstrong*, 2d Dist. Champaign No. 2015-CA-31, 2016-Ohio-5263, ¶ 12.

{¶ 14} Finally, as this Court noted in *Armstrong*:

In reviewing felony sentences, appellate courts must apply the standard of review set forth in R.C. 2953.08(G)(2), rather than an abuse of discretion standard. *See State v. Marcum*, [146 Ohio St.3d 516,] 2016–Ohio–1002, [59 N.E.3d 1231,] ¶ 9. Under R.C. 2953.08(G)(2), an appellate court may increase, reduce, or modify a sentence, or it may vacate the sentence and remand for resentencing, only if it "clearly and convincingly" finds either (1) that the record does not support certain specified findings or (2) that the sentence imposed is contrary to law.

*Armstrong*, ¶ 17.

{¶ 15} As noted above, the court had full discretion to impose any sentence within

the statutory range, and it was not required to give its reasons for doing so. Pursuant to R.C. 2929.14(A)(3), for a felony of the third degree that is a violation of R.C. 2907.05, "the prison term shall be twelve, eighteen, twenty-four, thirty, thirty-six, forty-two, forty-eight, fifty-four, or sixty months." As the trial court noted, R.C. 2907.05(A)(4)(C)(2)(b) provides that the "court shall impose on an offender convicted of gross sexual imposition in violation of division (A)(4) * * * of this section a mandatory prison term equal to one of the prison terms prescribed in section 2929.14 of the Revised Code for a felony of the third degree if * * * the offender previously was convicted of or pleaded guilty to a violation of this section * * * and the victim of the previous offense was less than thirteen years old."

{¶ 16} Since we have no basis to conclude that the record does not support the court's findings, or that the sentence imposed is contrary to law, we hereby overrule Cochran's sole assignment of error. The judgment of the trial court is affirmed.

. . . . . . . . . . . . .

FROELICH, J., concurs.

HALL, P.J., concurring:

{¶ 17} I agree that "we have no basis to conclude that the record does not support the court findings, or that the sentence imposed is contrary to law." (*Supra*, ¶16). However, in this case, the court was not required to make any "findings" before imposing a sentence within the statutory range as long as the court considered the statutory factors in R.C. 2929.12 and R.C. 2929.13, which it did.

{¶ 18} In addition, I write separately to reiterate my comments on the standard of review applicable to sentencing and on what I believe is an inaccurate statement of law in paragraph 17 of *State v. Armstrong*, *supra*, which is quoted in paragraph 14 of the

majority opinion as follows: "* * * an appellate court may increase, reduce, or modify a sentence, or it may vacate the sentence and remand for resentencing, only if it 'clearly and convincingly' finds either (1) that the record does not support certain specified findings or (2) that the sentence imposed is contrary to law." In my view, clearly and convincingly finding that the record does not support specified findings is an indirect shifting of the burden to produce evidentiary support into the record for appellate review.

{¶ 19} My interpretation is based on the terminology of *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231. In my view, the holding in *Marcum* allows a sentence to be vacated or modified "only if the appellate court finds by clear and convincing *evidence* that the record does not support the sentence." *Id.* at ¶ 23. (Emphasis added.)[2] The difference is that the *Armstrong* quote is in the affirmative, requiring the State or the court to have introduced information into the record to justify the sentence. I believe the *Marcum* quote is in the negative. If the record does not contain evidence from which we can determine that the sentence is clearly wrong, then it stands, and we are without authority to adjust it. The majority's quote puts the burden on the State or the court, incorrectly in my view, to insure there is information in the record to justify the sentence. This distinction is particularly important with regard to sentencing following a plea where the record often is sparse, perhaps even where the defense, or the court, dispenses with a PSI report.

---

[2] I acknowledge that the Supreme Court, in several subsequent references to *Marcum*, has stated "[i]n *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, we held that R.C. 2953.08(G)(2) allows an appellate court to increase, reduce, or otherwise modify a sentence only when it clearly and convincingly finds that the sentence is (1) contrary to law and/or (2) unsupported by the record. *Id.* at ¶ 7." *See, e.g., State v. McGowan*, 147 Ohio St.3d 166, 2016-Ohio-2971, 62 N.E.3d 178, ¶ 1. But the Supreme Court has not explicitly ruled on the issue I raise here.

**{¶ 20}** I previously have written that "even a record that is largely silent is not clearly and convincingly contrary to a trial court's consecutive-sentencing determination unless there is substantial affirmative factual information in support of the defendant to conclude that the trial court is clearly wrong." *State v. Kay,* 2d Dist. Montgomery No. 26344, 2015-Ohio-4403, ¶ 27 (Hall, J., dissenting). I recognize our jurisprudence on this issue has been mixed, but in *State v. Withrow*, 2016-Ohio-2884, 64 N.E.3d 553 (2d Dist.), a majority, not including this writer, adopted the sparse-record notion and further stated: "Therefore, the question is not whether the trial court had clear and convincing evidence to support its findings, but rather, whether we clearly and convincingly find that the record fails to support the trial court's findings." *Id.* at ¶ 38, citing *State v. Rodeffer*, 2013-Ohio-5759, 5 N.E.3d 1069, ¶ 31 (2d Dist.), citing *State v. Venes*, 2013-Ohio-1891, 992 N.E.2d 453, ¶ 21 (8th Dist.). The *Withrow* majority also commented that "[t]he dissenting opinion in *Kay*, 2d Dist. Montgomery No. 26344, 2015-Ohio-4403, is correct in that the consecutive nature of the trial court's sentencing should stand unless the record overwhelmingly supports a contrary result. *Id.* at ¶ 26 (Hall, J., dissenting)." *Withrow*, ¶ 39.

**{¶ 21}** Regardless of my expressed concerns, in this case the record affirmatively supports the sentence imposed. Accordingly, I concur.

. . . . . . . . . . . .

Copies mailed to:

Jane A. Napier
Daniel F. Getty
Hon. J. Timothy Campbell
by assignment