[Cite as *State v. Kay*, 2014-Ohio-2676.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

STATE OF OHIO                                    :
                                                 :     Appellate Case No. 25761
         Plaintiff-Appellee                      :
                                                 :     Trial Court Case No. 2012-CR-1589/1
v.                                               :
                                                 :
LINDA ROCIA KAY                                  :     (Criminal Appeal from
                                                 :      Common Pleas Court)
         Defendant-Appellant                     :
                                                 :

· · · · · · · · · · ·

O P I N I O N

Rendered on the 20th day of June, 2014.

· · · · · · · · · ·

MATHIAS H. HECK, JR., by CARLEY J. INGRAM, Atty. Reg. #0020084, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45402
         Attorney for Plaintiff-Appellee

WILLIAM O. CASS, JR., Atty. Reg. #0034517, 135 West Dorothy Lane, Suite 209, Kettering, Ohio 45429
         Attorney for Defendant-Appellant

· · · · · · · · · · · ·

FAIN, J.

{¶ 1}     Defendant-appellant Linda Kay appeals from her conviction and sentence for

Murder, Aggravated Robbery, Aggravated Burglary, Felonious Assault, and Tampering with Evidence. She contends that the trial court committed plain error by failing to merge the convictions for Aggravated Burglary and Aggravated Robbery. She further contends that the trial court erred by imposing maximum, consecutive sentences. Finally, Kay claims that the State did not present sufficient evidence to support the convictions, and the convictions are against the manifest weight of the evidence.

{¶ 2}    We conclude that upon this record, Kay did not establish that the Aggravated Burglary and Aggravated Robbery offenses were not committed separately, so that the trial court did not commit plain error in failing to merge them. We further conclude that the record contains evidence sufficient to support the convictions, and the convictions are not against the weight of the evidence. Finally, the State concedes that the trial court erred when it imposed consecutive sentences without making the findings required by statute. Accordingly, that part of the judgment of the trial court imposing consecutive sentences is Reversed, the judgment of the trial court is Affirmed in all other respects, and this cause is Remanded for further proceedings on the issue of whether the sentences imposed shall be served consecutively or concurrently.

## I.    The State's Evidence

{¶ 3}    This case involves the May 21, 2012 shooting and death of Robert Munday. At trial, the State presented the testimony of Gary Grier, who testified that he had known both Kay and Munday for years. He testified that the night of May 20, he was on Ron Lewis's front porch along with Lewis, Munday, and another friend named Jeffrey Brant. Grier testified that Lewis lived next door to Munday. Grier testified that around midnight, he saw Kay and an

unknown male pull up in front of the homes. According to Grier, Munday left the porch, met Kay and the man with her, and the three proceeded to the back of Munday's home. Grier testified that he could hear arguing in Munday's home, and could hear Munday yelling. He testified that he then heard a gunshot, followed by a second shot, following which everyone on the porch scattered. There were a total of three gunshots. Grier went between the two homes to the back of the houses, where he saw Kay exit from Munday's back door. Grier testified that she appeared to be waiting on someone. He testified that he then saw the unknown male come out of the home. The man had a gun in his hand. Kay and the man, who was limping due to a gunshot wound, hurried to Kay's car and drove off.

{¶ 4} The State also presented the testimony of Lewis, who corroborated Grier's testimony. Lewis stated that he heard Munday yell, "what the f***," and then heard the gunfire. Lewis called the police.

{¶ 5} The State next presented Tara Hughes, who testified that Munday was her boyfriend. She testified that Munday sold drugs from his kitchen and that, at the time of the shooting, he had $6,510 stored in a dresser in a bundle. She testified that Munday had loaned Kay $1,200 and a gun. After the shooting, the money was gone, but a few crumpled bills were laying around the dresser.

{¶ 6} Jacob Mann, an Ohio State Trooper, testified that at 12:50 a.m. on May 21, he initiated a traffic stop of a vehicle traveling 75 miles per hour in a 55 mph zone on southbound Interstate 75 in the city of Moraine. Kay was alone in the vehicle. Mann noted that there were "crumpled bills" lying on the passenger floorboard and seat . Mann asked Kay where she obtained the money, to which she replied that she had won it at a "dice game." She further

informed Mann that she was traveling to "the boat," which he understood to be a casino. Mann testified that Kay was calm during the stop, and did not cause him any concern. He then issued a citation and ended the encounter.

{¶ 7}    Jason Young, an Indiana State Police Officer assigned to Hollywood Casino, testified that Kay was in the casino on May 21 at 3:28 a.m. He testified that Kay was noted for "suspicious activity," because she went to the "cage" and exchanged $1,300, in five and ten dollar bills, for larger bills. He further testified that Kay was observed entering the restroom wearing a long-sleeved dark shirt, and exiting the restroom wearing a white tank top.

{¶ 8}    Will Keltyk, a cage cashier at Hollywood Casino, testified that Kay came to his cage to exchange $1,300, in five and ten dollar bills, for larger bills. He testified that Kay's money was "crumpled up, a little, possibly torn." He further testified that he alerted his supervisor, because the transaction was suspicious and indicative of money laundering. He further testified that Kay was "fidgety and nervous," and did not want to provide her identification. He further testified that she attempted to "rush" him in the exchange.

{¶ 9}    The State presented Amy Ryan, who testified that she had been involved in a romantic relationship with Kay for approximately two years. Ryan testified that Kay and Munday were close friends, and that he had loaned Kay money. Ryan testified that Kay was not employed, and "a couple weeks prior to [the shooting], we had went [sic] to the casino and [Kay] lost all of her money, all of it." On the date of the alleged offenses, Kay told Ryan that she was "going to go out and try to make some money." Ryan testified that she next heard from Kay again at about 1:30 a.m., when Kay telephoned her and told her to "take a deep breath in because they had bodied him." She further testified that Kay arranged for Ryan and Kay's mother to

pack up a few items for Kay and to meet her at Hollywood Casino. Ryan testified that she and Kay's mother met Kay in the parking garage of the casino around 4:00 a.m., at which time Kay and her mother discussed disposing of Kay's vehicle. Kay then returned to her car and followed her mother out of the casino. They traveled past several houses until they reached a body of water. Kay had a black backpack with her when she exited the car. Kay put the car into neutral and rolled it into the water.

{¶ 10} According to Ryan, Kay's mother then drove Kay and Ryan to a hotel in Ohio, where she left them. During the ride, Kay told Ryan that she had been involved in a robbery that "had gone bad," and someone had been shot. Ryan testified that Kay told her to register a room in Ryan's name. Kay gave Ryan cash to pay for the room. Once in the room Kay told Ryan that she "and some other people were going to rob somebody and that [Kay] had sent somebody in and he had a gun on him just for protection because [Munday] had guns in his house." Ryan testified that Kay told her she was merely the "getaway driver" and did not get out of the car.

{¶ 11} Ryan testified that they went out to a carry-out gas station where they purchased some snacks and scissors. Once back in the room, Kay proceeded to cut her "really long braids" off, put her hair in a bag, and throw the bag in the hotel dumpster. They then decided to go to a different hotel, so they called a cab. At the new hotel, Kay again gave Ryan cash and told her to register in Ryan's name. They then went to a nearby Walmart, where Kay spent $538 in cash to purchase a laptop computer, luggage, a cellular telephone and DVD's. Kay also purchased, with cash, a MoneyGram in the amount of $700. Ryan testified that the next day Kay bought her a car for $1,500 in cash "for what she'd put her through." Ryan testified that they then returned to their apartment. Kay went to the leasing office to attempt to pay rent in advance, so that Ryan

would be able to stay there if Kay went to jail. Kay was arrested at the leasing office. Ryan testified that about one month later she found about $2,000 stuffed inside a plastic bottle of conditioner that was inside the luggage Kay had purchased. Ryan gave the police the bottle, the car, and about $460 in cash that Kay had given her.

## II.   The Course of Proceedings

{¶ 12}   Kay was arrested and indicted on three counts of Murder, two counts of Aggravated Burglary, two counts of Aggravated Robbery, two counts of Felonious Assault and one count of Tampering with Evidence. The jury convicted Kay on all indicted counts. At sentencing, the trial court merged the three counts of Murder, and sentenced Kay to a prison term of fifteen years to life for that offense. The two counts of Aggravated Burglary were merged, and Kay was sentenced to a prison term of eleven years for that offense. The two counts of Aggravated Robbery were also merged, and the trial court imposed a prison term of eleven years for that offense. The two counts of Felonious Assault were merged with one another, and with the Murder conviction. Kay was sentenced to a three-year prison term on the Tampering with Evidence charge.

{¶ 13}   The trial court ordered the prison terms be served consecutively, for a total sentence of 43 years to life.[1]   Kay appeals.

## III.   The Trial Court Did Not Commit Plain Error when it Failed to Merge

---

[1] The sentence includes a three-year prison term for the firearm specifications, which, by statute, must be served consecutively to, and before, the other sentences.

### the Aggravated Burglary and Aggravated Robbery Convictions

{¶ 14} Kay's First Assignment of Error states as follows:

THE COURT ERRED WHEN IT FAILED TO PROPERLY MERGE

THE ALLIED OFFENSES.

{¶ 15} Kay contends that the trial court should have merged the convictions of Aggravated Burglary and Aggravated Robbery.

{¶ 16} Kay has waived all but plain error by failing to raise any objection to the imposition of multiple punishments at the sentencing hearing. *State v. Mooty*, 2014-Ohio-733, 9 N.E.3d 443, ¶ 46 (2d Dist.). "To prevail under the plain error standard, an appellant must demonstrate both that there was an obvious error in the proceedings and that but for the error, the outcome of the trial clearly would have been otherwise." *Id.*, citing *State v. Noling*, 98 Ohio St.3d 44, 2002-Ohio-7044, 781 N.E.2d 88; *State v. Turner*, 2d Dist. Montgomery No. 24421, 2011-Ohio-6714, ¶ 8.

{¶ 17} Pursuant to the statute governing allied offenses, "[w]here the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one." R.C. 2941.25(A). Conversely, "[w]here the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them." R.C. 2941.25(B).

{¶ 18} In determining whether the offenses are allied offenses of similar import, "the question is whether it is possible to commit one offense and commit the other with the same

conduct, not whether it is possible to commit one without committing the other. * * * If the offenses correspond to such a degree that the conduct of the defendant constituting commission of one offense constitutes commission of the other, then the offenses are of similar import." *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061. "If the multiple offenses can be committed by the same conduct, then the court must determine whether the offenses were committed by the same conduct, i.e., 'a single act, committed with a single state of mind.' " *Johnson* at ¶ 49, quoting *State v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, 895 N.E.2d 149, at ¶ 50 (Lanzinger, J., dissenting). "If the answer to both questions is yes, then the offenses are allied offenses of similar import and will be merged." *Id.* "Conversely, if the court determines that the commission of one offense will never result in the commission of the other, or if the offenses are committed separately, or if the defendant has separate animus for each offense, then, according to R.C. 2941.25(B), the offenses will not merge." *Id.* at ¶ 51.

{¶ 19} The defendant has the burden of proving entitlement to merger. *State v. Jackson*, 2d Dist. Montgomery No. 24430, 2012-Ohio-2335, ¶ 134.

{¶ 20} Kay was convicted of Aggravated Burglary, in violation of R.C. 2911.11(A)(2), which states in pertinent part that "[n]o person, by force, stealth, or deception, shall trespass in an occupied structure * * *with purpose to commit in the structure * * * any criminal offense, if * * * [t]he offender has a deadly weapon * * *." She was also found guilty of Aggravated Robbery, in violation of R.C. 2911.01(A)(1) which provides that "[n]o person person in attempting or committing a theft offense * * * shall * * * [h]ave a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it."

{¶ 21} This court has held that Aggravated Burglary and Aggravated Robbery are often not allied offenses of similar import because they involve two separate crimes; entering into a premises by force, stealth or deception, and then committing a theft offense. In other words, "a burglary is complete upon entry into the victim's home, and a robbery subsequently committed inside the home constitutes a new, separate offense." *State v. Jackson*, 2d Dist. Montgomery No. 24430, 2012-Ohio-2335, ¶ 137. *See also State v. McClurkin*, 10th Dist. Franklin No. 11AP-944, 2013-Ohio-1140; *State v. Adams*, 1st Dist. Hamilton No. C-120059, 2013-Ohio-926.

{¶ 22} Aggravated Burglary is complete upon an offender's entrance while the Aggravated Robbery requires additional conduct. Separate conduct is present in this case. The evidence shows that Munday, Kay, and the accomplice entered into the house together. A few moments later, yelling was heard followed immediately by gunshots. The evidence shows that a struggle occurred in Munday's kitchen and that he was killed in the kitchen. However, the money taken from Munday was located in a dresser in the bedroom. The jury could reasonably infer that Kay entered the premises under false pretenses or deception for the purpose of robbing Munday, that a struggle ensued in the kitchen during which Munday was shot and killed, and that either Kay or the accomplice then went to the bedroom to retrieve the money.

{¶ 23} In contending that the offenses should merge, Kay argues in her reply brief:

> The [State] argues that the manner of entry does not matter because they [Kay and her companion] became trespassers when Munday revoked their privilege when he said "What the [f***], man?" or "What the [f***], bruh?" At this point, the [State] asserts both counts of aggravated burglary were complete. The [State] contends that the aggravated robbery was not complete until they shot him, took the money and fled. The problem with this conclusion is there is no

evidence verifying this sequence of events the [State] relies on.

Nevertheless, the deadly weapon subsection of aggravated robbery, which the [State] elected, was completed when [Kay] and/or her accomplice demanded money from Munday at gun point. At that point they were attempting a theft offense while armed with a deadly weapon. R.C. 2911.11(A)(2). Therefore, even under the [State's] theory, this count was completed at the exact same time the aggravated burglary was completed because they only became trespassers when they committed the aggravated robbery. Therefore, the aggravated burglary and aggravated robbery were committed by the same act, at the same time and they should have been merged.

{¶ 24} The problem with this analysis is that it reverses the parties' burdens. Kay has the burden of demonstrating, on this record, that the Aggravated Burglary and Aggravated Robbery offenses were committed at the same time, and with the same animus. And Kay's burden is elevated because she has forfeited all but plain error by having failed to assert, in the trial court, that the offenses should have been merged.

{¶ 25} Kay's factual analysis of the merger issue makes assumptions about what transpired within Munday's residence that are speculative in view of the dearth of evidence as to exactly what occurred, and in what order. Upon this record, we do not conclude that the trial court committed plain error when it failed to find that the two offenses were committed at the same time, with the same animus, and merge them.

{¶ 26} The First Assignment of Error is overruled.

**IV.   The Trial Court Erred when it Imposed Consecutive Sentences**

**without Making the Required Statutory Findings**

{¶ 27}   Kay asserts the following for her Second Assignment of Error:

THE TRIAL COURT ERRED WHEN IT IMPOSED MAXIMUM, CONSECUTIVE SENTENCES ON THE APPELLANT.

{¶ 28}   Kay contends that the trial court erred in imposing maximum consecutive sentences, because the trial court failed to make the findings of fact required by R.C. 2929.14(C)(4).   While Kay mentions the imposition of maximum sentences, she does not claim that the maximum sentences were improper.   Her argument addresses the trial court's failure to make the findings of fact required for the imposition of consecutive sentences.   She further requests that we not remand this issue to the trial court, but enter an order "running [her] sentences concurrently."   The State concedes error as to the failure to make the necessary findings of fact regarding the consecutive sentences, but requests that we remand the matter to the trial court.

{¶ 29}    R.C. 2929.14(C)(4), which authorizes the trial court to impose consecutive prison terms for convictions on multiple offenses, states that consecutive sentences can be imposed if the court finds that:   (1) a consecutive sentence is necessary to protect the public from future crime or to punish the offender; and (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public. Additionally, the statute requires that the trial court must find any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant

to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

*Id.*

{¶ 30} We agree that the trial court failed to make the findings required by the statute. Therefore, we conclude that the imposition of consecutive sentences must be reversed. But we decline to enter an order making the sentences run concurrently. It is for the trial court to determine whether to make the statutory findings. Then, if it does make those findings and re-imposes consecutive sentences, our narrow standard of review is set forth in R.C. 2953.08(G).

{¶ 31} The Second Assignment of Error is sustained.

## V. Kay's Conviction for Murder Is Supported by Sufficient Evidence, and Is Not Against the Manifest Weight of the Evidence

{¶ 32} Kay's Third and Fourth Assignments of Error state:

THE EVIDENCE WAS INSUFFICIENT TO SUPPORT THE APPELLANT'S CONVICTION FOR MURDER.

THE APPELLANT'S CONVICTION FOR MURDER WAS AGAINST
THE WEIGHT OF THE EVIDENCE.

{¶ 33}   Kay contends that the State failed to prove that Munday's death was a proximate result of committing Aggravated Robbery.   In support, she argues that there is no evidence in the record to support a finding that Munday was killed during the commission of the Aggravated Robbery.

{¶ 34}   A sufficiency-of-the-evidence argument challenges whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or to sustain the verdict as a matter of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).  "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."   *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 35}   In a   weight-of-the-evidence challenge, an appellate court "review[s] the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Thompkins*, 78 Ohio

St .3d 380, 387, 678 N.E.2d 541 (1997) quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist. 1983).

{¶ 36}   Kay was convicted of Murder in violation of R.C. 2903.02(B), which provides that "[n]o person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree * * *." The offense of violence committed as a predicate to the Murder charge in this case is Aggravated Robbery, which is proscribed by R.C. 2911.01(A)(1). That statute states that "[n]o person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall * * * [h]ave a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it[.]"

{¶ 37}   Ryan testified that Kay told her that "they bodied him." According to Ryan, Kay subsequently stated that "they shot somebody." Kay eventually told Ryan that she was going to rob someone, and she sent someone else in with a gun for protection because Munday had guns in his home. Grier and Lewis both testified that Kay and her accomplice entered Munday's home with Munday. They then heard arguing followed by gunfire. Grier testified that after the gunshots, he observed first Kay, then the accomplice, leave the scene. The money in Munday's dresser was missing following the event. Kay spent large amounts of money following the shooting.

{¶ 38}   A reasonable jury could find that Kay went to Munday's home with the intention to rob him, and she told her accomplice to carry a gun. While in the home, Munday was shot and killed. Further, a reasonable jury could infer that the fatal shooting took place during a

robbery from the fact that money was missing from Munday's drawer and Kay was in possession of a large amount of money after the shooting. Also, Kay left the house a few moments after the shooting, but did not seek help. Instead, she waited on her accomplice and then drove away from the scene. Flight can be considered as evidence of guilt. We conclude that the evidence is sufficient to support the conviction.

{¶ 39} Also, we do not conclude, based upon the evidence in this record, that the jury lost its way in convicting Kay of Murder, creating such a manifest miscarriage of justice that a new trial is required. This is not the exceptional case where the evidence weighs heavily against conviction.

{¶ 40} The Third and Fourth Assignments of Error are overruled.

## VI. Conclusion

{¶ 41} Kay's First, Third, and Fourth Assignments of Error having been overruled, and her Second Assignment of Error being sustained, that part of the judgment of the trial court imposing consecutive sentences is Reversed; the judgment of the trial court is Affirmed in all other respects; and this cause is Remanded for further proceedings with respect to the issue of whether the sentences should be imposed consecutively or concurrently.

. . . . . . . . . . . . .

DONOVAN and WELBAUM, JJ., concur.

Copies mailed to:

Mathias H. Heck
Carley J. Ingram

William O. Cass, Jr.
Hon. Barbara P. Gorman