[Cite as *State v. Champada*, 2016-Ohio-7291.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
FULTON COUNTY

State of Ohio                                              Court of Appeals No. F-14-006

    Appellee                                              Trial Court No. 14CR29

v.

Pacio P. Champada                              **DECISION AND JUDGMENT**

    Appellant                                              Decided:  October 7, 2016

* * * * *

Scott A. Haselman, Fulton County Prosecuting Attorney, for appellee.

Spiros P. Cocoves, for appellant.

* * * * *

**YARBROUGH, J.**

## I.  Introduction

{¶ 1} Appellant, Pacio Champada, appeals the judgment of the Fulton County Court of Common Pleas, sentencing him to 47 months in prison following a jury trial in which he was found guilty of one count of burglary, one count of grand theft, one count of theft, and one count of having weapons while under disability.

## A. Facts and Procedural Background

{¶ 2} The relevant facts in this case were established at trial as follows:

{¶ 3} On the night of November 10, 2013, a Fulton County deputy, Amos Boysel, was dispatched to a home in Delta, Fulton County, Ohio, to respond to a reported burglary. Upon arrival, Boysel discussed the burglary with the owner of the residence, Clark Brown. Brown had just returned to his home from a vacation in Tennessee. According to his trial testimony, Brown locked up the house and turned off the lights prior to departing on vacation.

{¶ 4} As Boysel continued his investigation, he noticed that the home was in disarray and the door jamb surrounding the front door was broken. Upon further inquiry, Boysel determined that several items were missing from the home, including a television, gift cards, money, and Brown's gun cabinet, which contained five firearms, two hunting knives, and several boxes of ammunition. According to Brown's testimony, the gun cabinet and its contents were worth several hundred dollars, excluding the value of the firearms.

{¶ 5} Boysel proceeded to gather evidence including "a latent fingerprint from a sound bar which sat in front of the television that disappeared from the residence," along with some money envelopes, the coaxial cable that was unscrewed from the back of the television by the perpetrators, and a blood sample from a drop of blood that was left on the front door. The blood and fingerprint were sent to the Bureau of Criminal

2.

Investigations (BCI) for testing. Upon examination, BCI determined that the blood was not human blood and the fingerprint was inconclusive.

{¶ 6} The ensuing investigation ultimately led officers to interview several individuals, including Jacob Baker and appellant's girlfriend, Danielle Figy. Baker, who described himself as appellant's "acquaintance," testified at trial pursuant to a plea agreement. Baker first met appellant while he was in high school. He was introduced to appellant through a classmate, who is presently the mother of appellant's child.

{¶ 7} Regarding his whereabouts on the night of June 8, 2013, Baker admitted that he was involved in the burglary of Brown's residence. He explained that he was motivated to commit the burglary by the need to gather money to support his heroin addiction. On the night of the burglary, appellant and Figy met Baker at an Econo Lodge located in Toledo, where Baker was living at the time. According to Baker, the following exchange took place while the three individuals were conversing at the hotel:

> I believe that I was there with [appellant] and [appellant's girlfriend,] Danielle and [appellant] had said to me, you know, let's – let's go hit a – let's make some money, pretty much. And we had went into Delta. He had a house that he had spotted out that he thought that we were going to hit. It was over on Providence Street in Delta. We had went there and we had scoped it out, and we realized that we weren't going to be able to do it, so we decided we were going to go look for another place. We had went out north of town, and that's when we had came about on County

Road 8-1. When we had went out on County Road 8-1, we had seen a house and all the lights were off. So we mutually agreed that we were going to see if could get into this house, to see if anybody was there. And we were going to get into it if no one was there.

{¶ 8} Danielle was the driver of a white Chevrolet Lumina that the group used to travel from the hotel to Brown's residence in Delta on the night of the burglary. As they approached the residence, Danielle dropped off appellant and Baker, and proceeded to a local saloon where she waited for them to complete the burglary.

{¶ 9} Upon arrival at Brown's residence, Baker and appellant walked around the perimeter to ensure nobody was present inside the home. At some point during this process, appellant decided to force his way through the locked front door using his shoulder. According to Baker's testimony, appellant made his way into the basement, where he located the gun safe. Initially, appellant attempted to pry open the safe. However, appellant and Baker eventually decided it would be more practical to steal the safe itself.

{¶ 10} Once finished scanning the home for any additional items of value, the record indicates that appellant and Baker removed the gun safe, along with a television, electric guitar, gift cards, cash, coins, a BB gun, and an electric blanket. Baker proceeded to call Danielle to have her return to the home. Upon Danielle's arrival, appellant and Baker loaded the items into the vehicle and the group returned to the Econo Lodge, where they unloaded the vehicle. The television and two of the five firearms that were stored in

4.

the gun safe were eventually sold.  However, while attempting to sell the remaining firearms, appellant, Baker, Danielle, appellant's brother, and another friend, Jerry St. Clair, were driving through Toledo when a police officer checked the vehicle's license plates and determined that Danielle had a warrant out for her arrest.  The officer pursued the vehicle, prompting the group to flee down a number of side streets.  Somewhere along the way, St. Clair and Baker exited the vehicle.  While the vehicle was stopped, the remaining firearms were disposed of in a nearby dumpster.

{¶ 11} Eventually, police caught the fleeing individuals and they were arrested. Thereafter, St. Clair and another individual, Chris Merrill, located the dumpster in which the firearms were disposed, retrieved the firearms, and took them back to Merrill's house. Upon her release from jail, Danielle met up with Merrill and the two of them sold the remaining firearms to an acquaintance, Chas Mull.

{¶ 12} After questioning several individuals including Baker, St. Clair, Figy, and Mull, officers were able to ascertain appellant's involvement in the burglary. Consequently, on March 17, 2014, appellant was indicted on one count of burglary in violation of R.C. 2911.12(A)(3), a felony of the third degree, one count of grand theft in violation of R.C. 2913.02(A)(1), a felony of the third degree, one count of theft in violation of R.C. 2913.02(A)(1), a felony of the fifth degree, and one count of having weapons while under disability in violation of R.C. 2923.13(A)(2), a felony of the third degree.

5.

**{¶ 13}** Appellant entered a plea of not guilty to the above-referenced charges, and a jury trial ensued. Following trial, the jury found appellant guilty of all charges, and the matter was continued for sentencing. On August 7, 2014, appellant's sentencing hearing was held, at which the trial court sentenced him to a prison term of 11 months for the theft count and 12 months for each of the remaining counts, to be served consecutively for a total term of 47 months.

**{¶ 14}** Appellant was appointed counsel to pursue his appeal. Based upon his belief that no prejudicial error occurred below, appellant's appointed counsel filed a motion to withdraw and a no-error brief pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

**{¶ 15}** This court concluded that arguable issues for appeal exist in this case, and appointed counsel to pursue the appeal on appellant's behalf. We directed new counsel to prepare an appropriate appellate brief. *State v. Champada*, 6th Dist. Fulton No. F-14-006, 2015-Ohio-2801 (July 10, 2015).

### B. Assignments of Error

**{¶ 16}** Appellant has raised the following assignments of error for our review:

ASSIGNMENT OF ERROR NO. ONE

The trial court committed plain error to the prejudice of Mr. Champada by imposing multiple sentences for allied offenses of similar import in violation of his right to due process and his right to counsel as

guaranteed by the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and the applicable portions of the Ohio Constitution.

ASSIGNMENT OF ERROR NO. TWO

Trial counsel rendered ineffective assistance of counsel to the prejudice of Mr. Champada by failing to object to the imposition of multiple sentences for allied offenses of similar import in violation of his right to due process, his right to counsel and to a fair and reliable trial as guaranteed by the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and the applicable portions of the Ohio Constitution.

## II.  Analysis

{¶ 17} In his first assignment of error, appellant argues that the trial court committed plain error by imposing multiple sentences for burglary, grand theft, and theft, which he argues are allied offenses of similar import.  At the outset, we note that appellant's conviction for having weapons while under disability is not at issue in this appeal as it is not argued to be an allied offense of burglary, theft, or grand theft.

{¶ 18} Appellant failed to raise a claim that the three offenses are allied offenses of similar import before the trial court.  It is a well-established rule that an appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court.  *Id.*  Thus, "[a]n error not raised in the trial court must be plain error in order for an appellate court to reverse."

7.

*State v. Edwards*, 6th Dist. Lucas No. L-08-1408, 2010-Ohio-2582, ¶ 8 (citations omitted), citing *State v. Long*, 53 Ohio St.2d 91, 372 N.E. 2 804 (1978).  Such a finding must be made with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.  *Id.*

{¶ 19} Appellant cites to *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, in support of his argument that the trial court committed plain error by imposing multiple sentences for allied offenses of similar import.  In *Underwood*, there was an agreement that the offenses to which the defendant entered guilty pleas were allied offenses of similar import.  The trial court accepted the agreement, and sentenced the defendant on all counts, with time to run concurrently.  The Ohio Supreme Court determined that it was plain error to sentence the defendant on separate counts for allied offenses of similar import, even though all sentences were run concurrently.  *Underwood* is distinguishable to the present case because there is no agreement regarding allied offenses.  Ultimately, the crux of the argument is whether or not the offenses were allied offenses of similar import.

{¶ 20} Concerning allied offenses of similar import, R.C. 2941.25 provides:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

8.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 21} As set forth in *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, the test for whether offenses are allied offenses of similar import under R.C. 2941.25 is two-fold. First, the court must determine "whether it is possible to commit one offense and commit the other with the same conduct." *Id.* at ¶ 48. Second, the court must determine "whether the offenses were committed by the same conduct, i.e., 'a single act, committed with a single state of mind.'" *Id.* at ¶ 49, quoting *State v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, 895 N.E.2d 149, ¶ 50 (Lanzinger, J., dissenting). "If the answer to both questions is yes, then the offenses are allied offenses of similar import and will be merged." *Id.* at ¶ 50.

{¶ 22} Recently, the Supreme Court of Ohio expounded upon its holding in *Johnson*, stating:

As a practical matter, when determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must ask three questions when a defendant's conduct supports multiple offenses: (1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus

or motivation?  An affirmative answer to any of the above will permit separate convictions.  The conduct, the animus, and the import must all be considered.  *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 31.

{¶ 23} In the present case, the record indicates that when appellant and Baker initially decided to break into Brown's home, they circled the perimeter to determine whether anyone was home.  When they were convinced the home was empty, appellant charged the door with his shoulder, broke the door jamb and entered into the home.  When that occurred, appellant and Baker heard a loud noise and ran away, down the street.  At that point, the offense of burglary was complete.[1]  Baker testified that he began to have second thoughts, and that appellant convinced him to go back to the house.  Baker complied, and the two went back into the home and subsequently committed the theft offenses.

{¶ 24} We find that the burglary offense was committed separately from the theft offenses.  In accordance with *Ruff*, the fact that the offenses were committed separately

---

[1] R.C. 2911.12(A)(3) defines burglary as:

(A) No person, by force, stealth, or deception, shall do any of the following:

(3)  Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, with purpose to commit in the structure or separately secured or separately occupied portion of the structure any criminal offense.

10.

permits separate convictions. *Id.* In the present circumstance, burglary is not an allied offense of similar import with either theft offense.

{¶ 25} Concerning the two theft offenses, we would note that appellant carries the burden to demonstrate a reasonable probability that the convictions were for allied offenses of similar import committed with the same conduct and without a separate animus. *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 22. Further, the Ohio Supreme Court has admonished courts to notice plain error "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph three of the syllabus.

{¶ 26} Appellant has not met his burden. The record is clear that appellant stole items valued at over $1,000, and also separately stole firearms, supporting multiple charges. In accordance with *Ruff,* the first inquiry this court must make is whether the theft offense and grand theft offense are of dissimilar import or significance. Two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable. *Ruff* at ¶ 26.

{¶ 27} Appellee recites language from the 1974 committee comments to H.B. 511, regarding the enactment of changes to R.C. 2910.13, stating that "[T]he new section also makes stealing certain items grand theft, regardless of their value, because they are particularly subject to organized criminal activity, and because of the high risk that the

11.

ultimate harm flowing from their unlawful acquisition may far exceed the harm intrinsic in the theft itself." R.C. 2913.02. The record indicates that after stealing the firearms, appellant illegally sold them to individuals, thereby creating the risk of further harm envisioned by the committee with the enactment of H.B. 511.

{¶ 28} The theft of a firearm can create separate harm than the theft of other household items. We agree that the theft of a television or gift cards financially harms only the victim of the theft as a sole victim. The theft of a firearm, in this circumstance, created a separate harm, and the court did not plainly error by not considering the two theft offenses as allied offenses of similar import.

{¶ 29} We find that the court did not commit plain error by separately convicting and sentencing appellant for burglary, theft, and grand theft.

{¶ 30} Therefore, appellant's first assignment of error is not well-taken.

{¶ 31} In his second assignment of error, appellant argues that trial counsel rendered ineffective assistance of counsel by failing to object to the imposition of multiple sentences for allied offenses of similar import. We disagree.

{¶ 32} In order to prove ineffective assistance of counsel, appellant must show defense counsel's performance fell below an objective standard of reasonableness, and a reasonable probability exists that, but for counsel's error, the results of the trial would have been different. *Strickland v. Washington*, 466 U.S. 687-688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In Ohio, a properly licensed attorney is presumed competent. *State v. Hamblin*, 37 Ohio St.3d 153, 524 N.E.2d 476 (1988). "Debatable strategic and tactical

12.

decisions may not form the basis of a claim for ineffective assistance of counsel." *State v. Campbell*, 6th Dist. Lucas No. L-05-1284, 2006-Ohio-4435, ¶ 20, citing *State v. Phillips*, 74 Ohio St.3d 72, 85-88, 656 N.E.2d 643 (1995).

{¶ 33} "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland*, 466 U.S. at 689. The question is whether counsel acted "outside the wide range of professionally competent assistance." *Id*. at 690.

{¶ 34} Based on our analysis of allied offenses in appellant's first assignment of error, we cannot say that counsel acted outside the range of professionally competent assistance. We found that under the circumstances of this case, burglary was not an allied offense of theft or grand theft. We further found that in this circumstance, the theft of a firearm created a separate harm from the theft of other household items. Appellant cannot make a showing that a reasonable probability exists that had it not been for the errors of trial counsel, that the result would have been different.

{¶ 35} Therefore, appellant's second assignment of error is not well-taken.

### III.  Conclusion

{¶ 36} Based on the foregoing, the judgment of the Fulton County Court of Common Pleas is affirmed. Costs are hereby assessed to appellant in accordance with App.R. 24.

Judgment affirmed.

13.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.                              _____
                                                         JUDGE

Arlene Singer, J.

                                       _____
Stephen A. Yarbrough, J.                                      JUDGE
CONCUR.

                                       _____
                                                         JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.sconet.state.oh.us/rod/newpdf/?source=6.