**[Cite as *State v. Rice*, 2020-Ohio-4404.]**

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 28572 |
| | : | |
| v. | : | Trial Court Case No. 2019-CR-1200 |
| | : | |
| DASHAWN L. RICE | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 11th day of September, 2020.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by LISA M. LIGHT, Atty. Reg. No. 0097348, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

J. DAVID TURNER, Atty. Reg. No. 0017456, 101 Southmoor Circle NW, P.O. Box 291771, Dayton, Ohio 45429
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Defendant-appellant, Dashawn L. Rice, appeals from his conviction in the Montgomery County Court of Common Pleas after a jury found him guilty of one count of robbery and one count of burglary. In support of his appeal, Rice contends that the sentence he received for his offenses was contrary to law because the trial court failed to make an allied offense determination at his sentencing hearing and failed to merge his offenses as required by R.C. 2941.25. Rice also challenges the consecutive nature of his sentences by arguing that the trial court's consecutive-sentences findings were unsupported by the record. Rice further argues that he was denied a fair trial due to the trial court's excluding relevant, material evidence. For the reasons outlined below, Rice's judgment of conviction will be affirmed.

## Facts and Course of Proceedings

{¶ 2} On May 6, 2019, a Montgomery County grand jury returned a three-count indictment charging Rice with robbery (physical harm) in violation of R.C. 2911.02(A)(2), a second-degree felony; burglary in violation of R.C. 2911.12(A)(1), also a second-degree felony; and grand theft of a motor vehicle in violation of R.C. 2913.02(A)(1), a fourth-degree felony. The charges were based on allegations that Rice entered the residence of his ex-girlfriend, S.L., without permission by kicking down the front door during the early morning hours of April 4, 2019. Once inside the residence, Rice allegedly shoved S.L. to the ground, stole her car keys and cell phone, and then drove away in S.L.'s vehicle without her permission.

{¶ 3} Rice pled not guilty to the charges and the matter proceeded to a two-day jury trial. At trial, S.L. testified that she and Rice had been dating for one month but

ended their relationship via text message on April 3, 2019. S.L. testified that after ending their relationship that day, Rice asked her to return some clothing that he had left at her residence. S.L. claimed that she told Rice he could come over and retrieve the clothing himself. According to S.L., Rice did not indicate when or if he was coming over, and S.L. had no other contact with Rice for the rest of the day. S.L. testified that she spent the evening at home watching television with her one-year old son, her sister, and a platonic male friend. S.L. testified that after her sister left, and after her son went to bed, she and her friend fell asleep on the couch.

{¶ 4} At 1:00 a.m. the next morning, S.L. woke up to a noise in her driveway and to Rice knocking at her front door. S.L. testified that the noise in her driveway was a red truck that had dropped Rice off at her residence. S.L. testified that she looked at her phone and saw that Rice had been texting her while she was sleeping. When Rice continued to bang on the door, S.L. told him that she was not going to let him inside because it was too late. S.L. testified that Rice continued banging on her door until he eventually kicked it open with such force that the door fell off the door frame. Once inside the residence, S.L. testified that Rice started yelling and cussing at her. S.L. testified that Rice then grabbed her arms and shoved her to the ground. Thereafter, S.L. went to her son's room; her son had been woken up by the incident. S.L. testified that her friend was also in her son's room at that time.

{¶ 5} S.L. testified that, after checking on her son, she and Rice argued while Rice went through her house looking for his clothing. Rice then demanded that she drop him off at his friend's house. After refusing Rice's repeated demands to drop him off at his friend's house, and after continually telling him to leave her home, S.L. saw Rice grab her

car keys from a key rack on the wall and drive away in her car. S.L. testified that, as Rice left her residence, he screamed: "I'll bring your car back." Trans. Vol. I, p. 102. However, S.L. testified that she did not give Rice permission to take her car keys and told him not to take her car.

{¶ 6} During her testimony, S.L. also indicated that Rice took her and her friend's cell phones. Although S.L. did not actually see Rice take her phone, S.L. testified that she threw her phone on the couch when Rice kicked down the door and that her phone was missing from the couch after Rice left her residence. S.L. did, however, see Rice take her friend's phone. Specifically, S.L. testified that she had her friend's cell phone in her hand while she and Rice were arguing, and that Rice grabbed the phone from her hand and put it in his pocket.

{¶ 7} Once Rice drove away in S.L.'s car, S.L. called 9-1-1 from a neighbor's phone to report the incident. The police thereafter arrived at S.L.'s residence and S.L. spoke to an investigating officer. S.L. testified that while she was speaking to the investigating officer, she saw the same red truck that had dropped Rice off at her residence drive by. S.L. testified that she pointed the red truck out to the officer and that the police pursued the vehicle.

{¶ 8} Deputy David Posma of the Montgomery County Sheriff's Office testified to seeing the red truck drive by as S.L. was being interviewed. Deputy Posma testified that he conducted a traffic stop of the red truck after observing the truck's license plate light was burnt out. Deputy Posma testified that Rice was identified as a passenger in the truck and that Rice matched S.L.'s description of the suspect who had entered her home. Deputy Posma detained Rice in the back of his cruiser and transported him to the area of

S.L.'s residence, where Rice was Mirandized and interviewed by Montgomery County Sheriff's Deputy David Williams. Deputy Williams testified that he interviewed Rice, and Rice told him he did not live at S.L.'s residence, but simply had some clothes at her house.

{¶ 9} S.L. testified that she later found her car a block away from her residence on the side of the road. Because she did not have her car keys, she called the police, and the police had her car towed to her driveway. S.L. testified that her car keys were eventually found under the seat/side of her car. However, S.L. never found her cell phone.

{¶ 10} When discussing her relationship with Rice, S.L. testified that Rice would spend a few nights a week at her residence; however, Rice did not live at her residence or receive mail there. S.L. also testified that she had helped Rice apply for food stamps by writing a March 22, 2019 letter that falsely asserted Rice lived at her residence and paid $700 a month in rent. The State submitted the letter as evidence and S.L. confirmed that the statement in the letter was not true. On cross-examination, Rice's counsel chose not ask S.L. any questions about her living situation with Rice or the letter she wrote.

{¶ 11} After the State rested its case, Rice indicated that it was his intent to present testimony from a representative of Montgomery County Job and Family Services ("MCJFS") regarding certain public assistance records that Rice had subpoenaed. The records included a correspondence to Rice from MCJFS that was addressed to S.L.'s residence. Rice advised the trial court that he was going to use the records to establish that he and S.L. had a live-in relationship. However, because the records were not received by the parties until after the State had already rested its case, and because Rice

had the opportunity to cross examine S.L. about their living arrangement, the trial court declined to let Rice use the MCJFS records at trial. After objecting to the trial court's decision, Rice called Deputy Williams to testify about the police report he authored. Rice then rested his case and the matter was submitted to the jury.

{¶ 12} Following deliberations, the jury returned a verdict finding Rice guilty of robbery and burglary, but not guilty of grand theft of a motor vehicle. Prior to sentencing, both parties submitted sentencing memorandums in which they discussed the issue of whether the robbery and burglary should merge as allied offenses at sentencing. Rice argued for merging the sentences, while the State argued that the robbery and burglary were not allied offenses that should merge. The parties raised their respective arguments at the sentencing hearing as well.

{¶ 13} After listening to the parties' arguments at the sentencing hearing and after stating that it had considered the parties' sentencing memorandums, the trial court imposed separate sentences for Rice's robbery and burglary offenses. For robbery, the trial court imposed a mandatory indefinite term of 5 to 7.5 years in prison. For burglary, the trial court imposed a mandatory definite minimum term of five years in prison. The trial court further ordered the sentences for robbery and burglary to be served consecutively for a total, indefinite term of 10 to 12.5 years in prison.

{¶ 14} Rice now appeals from his conviction, raising four assignments of error for review.

**First and Second Assignments of Error**

{¶ 15} Under his first and second assignments of error, Rice claims that his

sentence is contrary to law because the trial court failed to make an allied-offense determination at his sentencing hearing and because the trial court failed to merge his robbery and burglary offenses as required by R.C. 2941.25.

{¶ 16} Because he never objected to the trial court's failure to make an allied-offense determination at the sentencing hearing, Rice concedes that a plain-error standard of review applies to that issue on appeal. "Plain error exists when the outcome would clearly have been different if the error had not occurred and should only be recognized with utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice." (Citations omitted.) *State v. Skatzes*, 2d Dist. Montgomery No. 15848, 2003-Ohio-516, ¶ 53.

{¶ 17} Upon review, we do not find that the trial court erred, plainly or otherwise, with regard to making an allied-offense determination. Although the trial court did not announce its allied-offense determination at the sentencing hearing, the record indicates that an allied-offense determination was in fact made. Prior to the trial court's imposition of separate sentences, both parties argued the allied-offense issue at the sentencing hearing as well as in their sentencing memorandums. Because the trial court imposed separate sentences after advising the parties that it had considered their sentencing memorandums and after the parties had made their allied-offense arguments at the sentencing hearing, we find that the trial court's decision to impose separate sentences was an implicit rejection of any contention that the offenses should merge for sentencing. Simply put, the trial court's allied-offenses determination was implied from its decision to impose separate sentences. Moreover, as noted by the Supreme Court of Ohio, when a trial court "fails to make any finding regarding whether the offenses are allied, imposing

a separate sentence for each offense is not contrary to law[.]" *State v. Williams*, 148 Ohio St.3d 403, 2016-Ohio-7658, 71 N.E.3d 234, ¶ 26. Therefore, because the trial court imposed separate sentences for Rice's robbery and burglary offenses, the failure to make any allied-offenses finding on the record at the sentencing hearing did not render those sentences contrary to law.

{¶ 18} The second part of Rice's argument—that his robbery and burglary offenses should have merged pursuant to R.C. 2941.25—is reviewed de novo. *State v. Hazley*, 2d Dist. Montgomery No. 27107, 2016-Ohio-7689, ¶ 16, citing *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245, ¶ 28. "De novo appellate review means that this court independently reviews the record and affords no deference to a trial court's decision." (Citation omitted.) *State v. Kennedy*, 2d Dist. Clark No. 2017-CA-100, 2018-Ohio-4997, ¶ 35.

{¶ 19} R.C. 2941.25 governs the merger of allied offenses and provides as follows:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 20} " '[W]hen determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must ask three questions when defendant's conduct supports multiple offenses: (1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation? An affirmative answer to any of the above will permit separate convictions. The conduct, the animus, and the import must all be considered.' " *State v. Earley*, 145 Ohio St.3d 281, 2015-Ohio-4615, 49 N.E.3d 266, ¶ 12, quoting *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 31.

{¶ 21} As to the question of import and significance, "two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *Ruff* at ¶ 23. "[A] defendant's conduct that constitutes two or more offenses against a single victim can support multiple convictions if the harm that results from each offense is separate and identifiable from the harm of the other offense." *Id.* at ¶ 26. Burglaries and robberies " 'are often not allied offenses of similar import because they involve two separate crimes; entering into the premises by force, stealth or deception, and then committing a theft offense.' " *State v. Terrel*, 2d Dist. Miami No. 2014-CA-24, 2015-Ohio-4201, ¶ 24, quoting *State v. Kay*, 2d Dist. Montgomery No. 25761, 2014-Ohio-2676, ¶ 21.

{¶ 22} As previously noted, Rice contends that his robbery and burglary offenses were allied offenses that should have merged at sentencing. We disagree. In committing the burglary offense at issue, the record establishes that Rice trespassed in the victim's home while the victim was present by forcefully kicking down the front door

with the purpose to commit the crimes of assault and theft therein. *See* R.C. 2911.12(A)(1) ("[n]o person, by force, stealth, or deception, shall * * * [t]respass in an occupied structure * * * when another person other than an accomplice of the offender is present, with purpose to commit in the structure * * * any criminal offense"). In order to commit burglary, Rice did not have to actually commit a criminal offense inside the victim's residence, as the intent to commit any criminal offense while trespassing constitutes the commission of the burglary. *State v. Chafin*, 2d Dist. Greene No. 2019-CA-69, 2020-Ohio-3983, ¶ 35. Therefore, Rice completed the burglary once he entered the victim's residence by force with the intent to commit a criminal offense therein. *See id.* at ¶ 37.

{¶ 23} After the burglary was completed, Rice committed robbery. Specifically, the record establishes that once Rice was inside the victim's residence, Rice grabbed the victim's arms, shoved the victim to the ground, and then stole the victim's car keys and a cell phone from the victim's hands. *See* R.C. 2911.02(A)(2) ("[n]o person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall * * * [i]nflict, attempt to inflict, or threaten to inflict physical harm on another"). These events occurred after the burglary had already been completed and involved the separate elements of theft and physical harm/attempted physical harm against the victim.

{¶ 24} In *State v. Jackson*, 149 Ohio St.3d 55, 2016-Ohio-5488, 73 N.E.3d 414, the Supreme Court of Ohio considered a similar factual scenario and held that:

> The burglary was complete when Jackson entered Fingerhut's residence with the intent to commit murder, theft, or kidnapping. Jackson committed aggravated robbery when he stole Fingerhut's car after murdering him. Thus, the aggravated burglary and aggravated robbery

were separate offenses, because they did not arise from the same act. (Citations omitted.) *Id.* at ¶ 129. *See also State v. Champada*, 6th Dist. Fulton No. F-14-006, 2016-Ohio-7291, ¶ 24 (burglary attempt was complete upon breaking into door on the premises and subsequent thefts of items were not allied offenses); *State v. Evett*, 9th Dist. Medina No. 14CA0008-M, 2015-Ohio-2722, ¶ 39 (burglary was accomplished by defendant's entrance into home with intent to steal when she knew she was not welcome; theft occurred later).

{¶ 25} As in *Jackson*, the robbery and burglary in this case did not arise from the same act. The burglary arose from Rice's forcefully trespassing inside the victim's home with the purpose to commit a criminal offense therein, while the robbery arose from Rice's stealing the victim's car keys and a cell phone while causing/attempting to cause the victim physical harm. Because the robbery and burglary offenses did not arise from the same conduct and involved separate, identifiable harm, those offenses were not allied offenses within the meaning of R.C. 2941.25. Therefore, the trial court did not err by failing to merge the offenses at sentencing.

{¶ 26} For the foregoing reasons, Rice's first and second assignments of error are overruled.

**Third Assignment of Error**

{¶ 27} Under his third assignment of error, Rice contends that the trial court erred by excluding evidence at trial that was relevant and material to his defense. The evidence in question was public assistance records relating to Rice that Rice subpoenaed from MCJFS. The records included a correspondence to Rice from MCJFS that was

addressed to the victim's residence. Rice contends that this evidence was relevant and material to his defense because it established that he had a live-in relationship with the victim and received mail at the victim's address. Rice claims that excluding the records from MCJFS prejudiced him and prevented him from receiving a fair trial because it denied him the ability to impeach the victim's testimony that he did not live with the victim or receive mail at her residence.

{¶ 28} "A trial court has broad discretion to admit or exclude evidence, and its exercise of that discretion will not be disturbed on appeal absent an abuse of discretion." *State v. Easterling*, 2019-Ohio-2470, 139 N.E.3d 497,¶ 54 (2d Dist.), citing *State v. Norris*, 2d Dist. Montgomery No. 26147, 2015-Ohio-624, ¶ 14. "A trial court abuses its discretion when it makes a decision that is unreasonable, unconscionable, or arbitrary." *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 34. "[M]ost instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary*." AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). "A decision is unreasonable if there is no sound reasoning process that would support that decision." *Id.*

{¶ 29} In this case, the record establishes that Rice subpoenaed the records from MCJFS in advance of trial. The records, however, were not received by the parties until after the State had rested its case. Since the State was not going to be able to use the evidence from MCJFS, the trial court ruled that Rice would not be allowed to use the evidence in his defense. In reaching this decision, the trial court confirmed that Rice had planned on using the evidence to establish a live-in relationship with the victim and noted

that Rice had been given the opportunity to cross-examine the victim regarding that issue.

{¶ 30} Because the MCJFS records at issue were not admitted by the State at trial and were favorable to Rice, we find that the trial court's reasoning for excluding the MCJFS records was erroneous. However, the trial court's error was harmless because the exclusion of the MCJFS records was otherwise appropriate under Evid.R. 403(B). Pursuant to Evid.R. 403(B), the trial court has discretion to exclude relevant evidence if the evidence's probative value is outweighed by undue delay or needless presentation of cumulative evidence.

{¶ 31} Here, the probative value of the MCJFS records was minimal because the records were relevant only to the trespass element of burglary and there is an abundance of evidence establishing that Rice trespassed in the victim's residence when he kicked down the victim's front door. For example, the victim consistently testified that Rice did not live at her residence and did not have permission to enter her home on the night in question. The victim also testified to writing a letter that falsely asserted that Rice lived at her residence so that Rice could apply for and receive food stamps. The victim's letter, which was admitted into evidence, tended to establish why MCJFS corresponded with Rice using the victim's address, i.e., not because Rice lived with the victim, but because of the victim's false statement in the letter. More importantly, Deputy Williams testified that after Mirandizing Rice, Rice himself stated that he did not live at the victim's residence.

{¶ 32} Moreover, even if Rice had been permitted inside the victim's residence, once he committed an act of violence against the victim, i.e., assaulting her by grabbing her and shoving her to the ground, his permission to remain at the victim's residence was

presumably revoked. *State v. Metcalf*, 2d Dist. Montgomery No. 24338, 2012-Ohio-6045, ¶ 20, quoting 2 Katz, Martin, Lipton & Crocker, *Criminal Law*, Section 104:6 (3d Ed.) (" 'permission to enter a home is deemed terminated by the act of committing an offense of violence against a person authorized to revoke the permission' ").

**{¶ 33}** Because there was an abundance of evidence indicating that Rice did not live with the victim, and because Rice was otherwise not permitted in the victim's residence once he assaulted the victim, we find that the MCJFS records were needlessly cumulative evidence concerning the trespass element of burglary. In addition to being cumulative, the MCJFS records would have caused undue delay, as the record indicates that the witness from MCJFS who was subpoenaed to testify regarding the records was not present in court during Rice's case in chief. Therefore, when applying Evid.R. 403(B), we do not find that the trial court abused its discretion by excluding the MCJFS records. Although the trial court excluded the records for a different, erroneous reason, the trial court nevertheless reached the correct result, thus making the error harmless. *See State v. Hall*, 2d Dist. Miami No. 97 CA 22, 1997 WL 691509, *1 (Oct. 24, 1997), citing *Newcomb v. Dredge*, 105 Ohio App. 417, 152 N.E.2d 801 (2d Dist.1957), paragraph seven of the syllabus ("[i]f a trial court has stated an erroneous basis for its judgment, an appellate court will affirm the judgment if it is legally correct on other grounds, that is, when it achieves the right result for the wrong reasons"). *Accord State v. Handcock*, 2d Dist. Clark No. 2016-CA-3, 2016-Ohio-7096, ¶ 14; *State v. Gibson*, 2d Dist. Champaign No. 2016-CA-12, 2017-Ohio-691, ¶ 19.

**{¶ 34}** Rice's third assignment of error is overruled.

**Fourth Assignment of Error**

{¶ 35} Under his fourth assignment of error, Rice challenges the trial court's decision to impose consecutive sentences.   Although Rice concedes that the trial court made the consecutive-sentences findings required by R.C. 2929.14(C)(4), he claims that those findings were unsupported by the record.   We disagree.

{¶ 36} When reviewing felony sentences, appellate courts must apply the standard of review set forth in R.C. 2953.08(G)(2).   *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 7.   Pursuant to the plain language of R.C. 2953.08(G)(2), this court may vacate or modify Rice's sentence "only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law."   *Id*. at ¶ 1.   One of the relevant statutes referred to in R.C. 2953.08(G)(2) is the statute governing the imposition of consecutive sentences, R.C. 2929.14(C)(4).   Pursuant to R.C. 2929.14(C)(4), a trial court may impose consecutive sentences if it finds that: (1) consecutive service is necessary to protect the public from future crime or to punish the offender; (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public; and (3) one or more of the following three findings are satisfied:

> (a)   The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
>
> (b)   At least two of the multiple offenses were committed as part of one

or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c)     The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4)(a)-(c).

{¶ 37} "[A] trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry, but it has no obligation to state reasons to support its findings." *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, syllabus. "[W]here a trial court properly makes the findings mandated by R.C. 2929.14(C)(4), an appellate court may not reverse the trial court's imposition of consecutive sentences unless it first clearly and convincingly finds that the record does not support the trial court's findings." *State v. Withrow*, 2016-Ohio-2884, 64 N.E.3d 553, ¶ 38 (2d Dist.). This is a very deferential standard of review, as "the question is not whether the trial court had clear and convincing evidence to support its findings, but rather, whether we clearly and convincingly find that the record fails to support the trial court's findings." (Citation omitted.) *Id.* In applying that standard of review, "the consecutive nature of the trial court's sentencing should stand unless the record overwhelmingly supports a contrary result." (Citation omitted.) *Id.* at ¶ 39.

{¶ 38} In this case, there is no dispute that the trial court made the consecutive-sentence findings required under R.C. 2929.14(C)(4) at the sentencing hearing and in the sentencing entry. Rice, nevertheless, claims that the trial court's consecutive-sentence finding concerning his history of criminal conduct was unsupported by the record because the trial court did not refer to the presentence investigation report ("PSI") before imposing consecutive sentences. The record, however, establishes that the trial court specifically stated at the sentencing hearing that it had "reviewed the presentence investigation." Trans. Vol. II, p. 261. Contrary to Rice's claim otherwise, "the trial court was not required to set forth the findings of the presentence investigation report and was not required to incorporate them into the sentencing journal entry." *State v. Sword*, 8th Dist. Cuyahoga No. 104477, 2017-Ohio-295, ¶ 14.

{¶ 39} Upon review, we do not find that the PSI clearly and convincingly failed to support the trial court's consecutive-sentences findings. The PSI indicated that Rice had a lengthy criminal history. As a juvenile, Rice was adjudicated for aggravated menacing in 2000 and assault in 2001. As an adult, Rice had acquired 16 misdemeanor convictions and 6 felony convictions over a period of 13 years. The misdemeanors included three convictions for criminal trespass, one conviction for assault, one conviction for violating a protection order, and one domestic violence conviction. Rice's felony convictions included a burglary in 2010 and an aggravated robbery and intimidation of a crime victim in 2014. The PSI also specifically stated that Rice had a history of violence against his romantic partners. Given this information, we cannot say that the trial court's consecutive-sentences findings were unsupported by the record.

{¶ 40} For the foregoing reasons, Rice's fourth assignment of error is overruled.

## Conclusion

{¶ 41} Having overruled all assignments of error raised by Rice, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and HALL, J., concur.

Copies sent to:

Mathias H. Heck, Jr.
Lisa M. Light
J. David Turner
Hon. Gerald Parker